Ovide DUNCANTELL, Appellant

v.

The STATE of Texas, Appellee.

No. 14–04–00971–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

July 17, 2007.

David Alan Disher, La Marque, for Appellant.

Shirley Cornelius, Houston, for State.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

JOHN S. ANDERSON, Justice.

Appellant, Ovide Duncantell, appeals his conviction for the misdemeanor offense of interference with the duties of a public servant. *See* TEX. PENAL CODE ANN. § 38.15(a)(1) (Vernon 2003). We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Houston Police Officer R.C. Haney was the first witness to testify. According to Officer Haney, late in the evening of February 17, 2004, he and his probationary officer partner, J. Wooley, were parked in their police car in the parking lot of the Super Star Club located at the corner of Scott and Stassen Streets. Officer Wooley was completing paperwork for an unrelated narcotics arrest made a short distance from the Super Star Club. The narcotics suspect was in the backseat of the police car. While sitting in the front passenger seat, Officer Haney observed a vehicle, which Officer Haney later learned belonged to appellant, back into a parked Camaro. When appellant's vehicle failed to stop and attempted to leave the parking lot, Officer Haney exited the police car and attempted to stop the vehicle. The driver of the vehicle initially tried to drive around Officer Haney and only stopped when Officer Haney positioned himself directly in the front of the vehicle.

Officer Haney initiated an investigation into the accident and had the driver of appellant's vehicle, who he eventually learned was Barry Thompson, exit the vehicle. Appellant, who was 68 at the time, was in the front passenger seat. As part of his investigation, as well as for his own safety while he conducted the investigation, Officer Haney sought to control the area around the two vehicles.[1] Thompson

---

1. During the trial, Officer Haney testified on the reasons he wanted the area around his investigation to be tightly controlled. These reasons included his own physical safety as he had not had an opportunity to search the vehicle or suspect for weapons. In addition, the vehicle might contain evidence, such as open containers or narcotics, and Officer Haney did not want anyone entering the vehicle and possibly removing that evidence.

would not cooperate with Officer Haney, refusing to even provide his name. Officer Haney suspected Thompson was intoxicated so he initiated a DWI investigation. Thompson remained uncooperative and became increasingly belligerent. Ultimately, Officer Haney arrested Thompson and he was handcuffed and placed in the back seat of the police car along with the narcotics suspect.

While Officer Haney tried to deal with Thompson and the owner of the Camaro, appellant exited his vehicle and approached Officer Haney, informing him he owned the vehicle driven by Thompson. Officer Haney told appellant if Thompson was arrested, and appellant was the owner of the vehicle, he would release the vehicle to appellant. Officer Haney then informed appellant he was in a crime scene, a DWI investigation, that he was a witness to the accident, and was not free to go. Officer Haney instructed appellant to move to the other side of his vehicle and go back ten feet, and he would be with him as soon as possible. Appellant complied and moved to the other side of his vehicle.

While attempting to question Thompson through the open back door of the police car, Officer Haney observed appellant move to the back of the police car. While still quite upset, Thompson informed Officer Haney his identification was in a briefcase in the back seat of appellant's vehicle. Leaving Officer Wooley to try to calm down Thompson, Officer Haney went to appellant's vehicle and began looking through the briefcase in the back seat for Thompson's identification. Sensing someone behind him, Officer Haney turned around and was surprised to find himself standing face to face with appellant. Appellant, standing on Officer Haney's gun side and no more than a few inches away, shoved his identification in Officer Haney's face. Officer Haney told appellant to step back. Officer Haney then warned appellant not to walk up behind a police officer like that and told him to go back by the patrol car and to stay there until he was ready to speak with him. At that point appellant, who did not move away, became extremely agitated and aggressive, and began cursing at Officer Haney. Officer Haney again told appellant he was in a crime scene and instructed appellant to move away until he was ready to talk to him. Appellant again refused and began berating and threatening Officer Haney with consequences if he continued with his investigation.[2] Officer Haney stepped back several times to create distance between himself and appellant, telling appellant to calm down and get back, but appellant advanced each time to remain in close proximity to Officer Haney.

At this point, Officer Haney, who had decided appellant would be arrested for interfering, called for back-up to assist with his three suspects, two of whom were belligerent and potentially violent. Officer Haney then escorted appellant back to the rear of the patrol car. Officer Wooley stood with appellant until the back-up, Officer J.B. Sweatt, arrived. When Officer Sweatt drove up, appellant left the back of the patrol car and hurried toward Officer Sweatt's vehicle. After a loud exchange with Officer Sweatt, appellant returned to the patrol car. Officer Sweatt then moved over to Officer Haney. While Officer Haney briefed Officer Sweatt, appellant again approached the scene, yelling vulgarities. Officer Wooley intercepted him and prevented appellant from moving further into

**2.** Appellant told Officer Haney the vehicle was his, that Officer Haney was making a big mistake, that the scene was his (appellant's), that he (appellant) was in control, that Officer Haney did not know who he (appellant) was, that he (appellant) was a former city councilman and he had an open door policy with the police chief.

the crime scene. Finally, appellant attempted to leave the area, walking toward the entrance to the Super Star Club. Officer Sweatt pursued appellant, with Officer Haney following. After a brief struggle, in which appellant attempted to grab Officer Sweatt's genitals, appellant was handcuffed and arrested.

According to Officer Haney, his accident and DWI investigations were essentially shut down until he got the appellant in the backseat of a police car in handcuffs. Until then, because of appellant's actions, Officer Haney could not get the driver of appellant's vehicle identified, search the vehicle for identification or evidence, or conduct field sobriety tests on Mr. Thompson. Officer Haney testified that appellant's actions that night interrupted, impeded, and disrupted his investigation. In addition, Officer Haney testified on the amount of time lost as a result of appellant's conduct that night. According to Officer Haney, of the approximately forty-five minutes he spent at the scene, thirty to forty minutes were devoted to dealing with appellant.

Officer Haney also testified regarding the extent of the crime scene that evening in the Super Star Club parking lot. Initially, the crime scene encompassed the two vehicles involved in the accident as well as the area where Officer Haney was standing interviewing Mr. Thompson. Once he arrested Mr. Thompson and placed him in the back of the police car, Officer Haney testified the crime scene expanded to include the police car. According to Officer Haney, appellant was the only civilian, other than those brought in by the officers, who entered the crime scene area. Finally, Officer Haney testified that appellant entered the crime scene area more than once and was told more than once to leave the crime scene area.

The next witness to testify was Don Seward. Mr. Seward testified he was in-side the Super Star Club talking to the lady who owned the Camaro hit by appellant's vehicle and she asked him to accompany her outside when the police came into the club to find her. Mr. Seward then remained outside and was able to observe appellant's conduct. Mr. Seward testified that a police officer told appellant to stay in a specified area because they were conducting an investigation. Mr. Seward also testified that appellant kept moving and would not do what the officer asked him to do even though the officer asked him to stay out of the area three, four, or even five times.

Officer Sweatt also testified during appellant's trial. Officer Sweatt testified that, around midnight of February 17, 2004, Officer Haney requested that he come to the Super Star Club. As Officer Sweatt pulled into the parking lot, appellant rushed to his vehicle and he had to hurriedly exit. When Officer Sweatt placed his hand on appellant's chest to maintain space between them and told appellant to step back over to the patrol car, appellant became very agitated, but reluctantly did what he was told. Officer Sweatt then testified that he moved over to Officer Haney to be briefed on the situation and as they talked, appellant moved toward them two or three times, forcing Officer Haney to stop his investigation and focus on appellant. According to Officer Sweatt, although the crime scene was not roped off as would be the case for a murder investigation, it was adjacent to the two vehicles involved in the accident. Officer Sweatt also testified that appellant was told by both Officer Haney and himself, at different times, to stay at the back of the patrol car.

Appellant called Officer Wooley to testify. Officer Wooley testified that he remained in the police car to complete the paperwork related to the narcotics arrest

while Officer Haney conducted the accident investigation. Officer Wooley testified he exited the police car when he heard Mr. Thompson, the driver of appellant's vehicle, become loud and belligerent. After Mr. Thompson was placed in the back of the patrol car with the narcotics suspect, Officer Wooley testified he moved over to appellant's car where Officer Haney was leaning into the car and appellant was standing right behind him. When Officer Haney saw appellant and told him to return to where he had been standing, stay out of the crime scene, and permit the officers to continue their investigation, appellant initially refused and responded with abusive language. Officer Wooley eventually escorted appellant back to the rear of the patrol car. Officer Wooley testified that appellant attempted to walk back toward Officers Haney and Sweatt several times but he prevented him from doing so.

Finally, appellant testified in his own defense. Appellant testified Mr. Thompson drove him to the Super Star Club the evening of February 17, 2004 because he was unable to drive at night. Appellant testified that following the accident two police officers approached his car. Appellant further testified he remained inside his car for approximately five to fifteen minutes following the accident. According to appellant, he only exited his car to look for Mr. Thompson's driver's license in the back seat. At that point, a police officer came running up and yelled for appellant to move away from the car, which he immediately did. Appellant admitted he approached the officer questioning Mr. Thompson in an effort to tell the officer about his need to go home. In addition, appellant admitted he became excited

when he saw Mr. Thompson handcuffed and placed under arrest because he could not drive himself home. Appellant also admitted he followed the officers to tell them to remove Mr. Thompson's handcuffs. Finally, appellant admitted he disregarded the officers' repeated orders to stand back and described two occasions when he approached the investigating officers and was told to get back.

The jury found appellant guilty of interference with the duties of a public servant. The trial court sentenced appellant to sixteen days in jail with credit for four days already served. This appeal followed.

## DISCUSSION

In his first two issues on appeal, appellant argues section 38.15 of the Texas Penal Code ("the interference statute") is unconstitutionally overbroad and vague. In his third issue, appellant challenges the factual sufficiency of the evidence supporting his conviction. As it impacts our discussion of appellant's constitutional issues, we address his third issue, challenging the factual sufficiency of the evidence, first.

### A. Is the Evidence Factually Sufficient to Support Appellant's Convictions?

In his third issue, appellant argues the evidence is factually insufficient to support the jury's guilty verdict.[3] Specifically, appellant contends the evidence is factually insufficient to prove beyond a reasonable doubt that he interrupted, disrupted, impeded, and interfered with Officer Haney by repeatedly entering a crime scene area, because the crime scene area was not defined to appellant at the time of the offense and Officer Haney's testimony was inconsistent or contradictory regarding the extent of the crime scene. In addition,

---

**3.** As a factual sufficiency review begins with the presumption that the evidence supporting the jury's verdict is legally sufficient, and since appellant challenges only the factual

sufficiency of the evidence, he effectively concedes that the evidence is legally sufficient to sustain the conviction. *See Clewis v. State,* 922 S.W.2d 126, 134 (Tex.Crim.App.1996).

appellant contends that since he was not impeached by any prior criminal history, and therefore he was as credible as any other witness, his testimony alone should have won him an acquittal.

### 1. The Standard of Review

In a factual sufficiency review, we consider all the evidence in a neutral light. *Prible v. State*, 175 S.W.3d 724, 730–31 (Tex.Crim.App.2005). The evidence may be factually insufficient in two ways. *Id.* at 731. First, when considered by itself, evidence supporting the verdict may be so weak the verdict is clearly wrong and manifestly unjust. *Id.* Second, where the evidence both supports and contradicts the verdict, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Id.* Our evaluation should not intrude upon the fact finder's role as the sole judge of the weight and credibility given to any witness's testimony. *Cain v. State*, 958 S.W.2d 404, 408–09 (Tex.Crim.App. 1997). In addition, the jury may believe or disbelieve all or part of any witness's testimony. *Jones v. State*, 984 S.W.2d 254, 257 (Tex.Crim.App.1998). Reconciliation of any conflicts in the evidence falls within the exclusive province of the jury. *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim.App.1995). Finally, our analysis must consider the evidence appellant claims is most important in allegedly undermining the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

### 2. The Evidence is Factually Sufficient

■ In this case appellant was charged with interfering with the duties of a public servant. TEX. PENAL CODE ANN. § 38.15(a)(1). A person commits the offense of interference with the duties of a public servant if that person (1) while acting with criminal negligence; (2) interrupts, disrupts, impedes, or otherwise interferes with a peace officer; (3) while the peace officer is performing a duty or exercising authority imposed or granted by law. *Id.* Criminal negligence is defined in the Texas Penal Code as conduct committed by a person

when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(d).

■ Initially, we address appellant's contention that his testimony alone should have brought him an acquittal since he was not impeached by any criminal history. Appellant's contention contravenes the well-established standard of review for a jury's evaluation of the credibility of witnesses. The jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000). Our evaluation of the sufficiency of the evidence should not intrude upon the fact finder's role as the sole judge of the weight and credibility given to any witness's testimony. *Cain*, 958 S.W.2d at 408–09. Appellant's argument his testimony alone was sufficient to warrant an acquittal is without merit.

Likewise, appellant's argument the evidence is insufficient because the crime scene was never defined to him is without merit. Here, the jury heard Officer Haney's testimony that he informed appellant numerous times he was conducting an investigation and that appellant was intruding into the area of that investigation. Officer Haney also testified he initially ordered appellant to move ten feet back

from appellant's car and wait there until he was ready to talk to him. Later, Officer Haney testified he instructed appellant to remain behind his patrol car. In addition, Officer Wooley testified regarding his efforts to keep appellant out of the crime scene. Officer Sweatt also testified that he instructed appellant, on multiple occasions, to stay by Officer Haney's patrol car. Mr. Seward testified that appellant was told by a police officer to stay in a specified area because they were conducting an investigation. Mr. Seward also testified that appellant kept moving and would not do what the officer asked him to do even though the officer asked him to stay out of the area multiple times. Finally, appellant admitted disregarding the officers' repeated orders to stand back and described two occasions when he approached the investigating officers and was told to get back. Regardless of how the precise area of the investigation was defined, the evidence was sufficient for a jury to conclude that, beyond a reasonable doubt, appellant knew or should have known that, by repeatedly leaving the area where he was told to wait by several police officers, there was a substantial and unjustifiable risk that he was entering a prohibited area.

 Finally, appellant's contention that Officer Haney's testimony, describing the extent of the crime scene, weighs against the sufficiency of the evidence, is without merit. Officer Haney testified the crime scene did not include the entire Super Star Club parking lot, but initially encompassed only the area around the two vehicles involved in the collision. Officer Haney explained that once Mr. Thompson was arrested and placed in the back seat of the patrol car, the crime scene expanded to include the patrol car. The jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Johnson*, 23 S.W.3d at 7. The jury is free to believe any or all of the testimony of the State's witnesses. *Cole v. State*, 194 S.W.3d 538, 551 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd). The jury's decision is not manifestly unjust merely because the jury resolved conflicting views of the evidence in favor of the State. *Cain*, 958 S.W.2d at 410. The jury heard Officer Haney's testimony, considered the inconsistencies, if any, and still determined that appellant was guilty of interference with the duties of a public servant.

After neutrally examining all the evidence, we hold that the proof of guilt was not so obviously weak as to undermine confidence in the jury's determination; nor was the contrary evidence so strong that the beyond-a-reasonable-doubt standard could not have been met. The evidence is factually sufficient to support appellant's conviction. Accordingly, we overrule appellant's third issue.

**B. Is Penal Code Section 38.15 Unconstitutionally Overbroad and Vague?**

In his first issue, appellant asserts section 38.15 of the Texas Penal Code is unconstitutionally vague on its face because it violates his due process rights under the First and Fourteenth Amendments to the United States Constitution as it fails to provide adequate notice of the prohibited conduct. In his second issue, appellant argues the interference with the duties of a public servant statute is unconstitutionally overbroad on its face as it interferes with rights protected by the First Amendment to the United States Constitution. Because these two issues are closely related, we address them together.

*1. The Standard of Review*

 In construing whether a law is unconstitutionally vague and/or overbroad, we keep in mind the elementary principle of statutory construction: we interpret a

statute in accordance with the plain meaning of its language unless the language is ambiguous or the plain meaning leads to an absurd result. *Sanchez v. State*, 995 S.W.2d 677, 683 (Tex.Crim.App.1999). In determining a statute's plain meaning, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and usage." *Id.* (quoting TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005)); *see* TEX. PENAL CODE ANN. § 1.05(b) (making section 311.011 applicable to the Texas Penal Code). We begin our review of the constitutionality of a statute with the presumption that the statute is valid and assume the legislature did not act arbitrarily and unreasonably in enacting the statute. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex.Crim.App.2002). Therefore, if a statute can be construed in two different ways, one of which sustains its validity, we apply the interpretation that sustains its validity. *State v. Carmaco*, 203 S.W.3d 596, 599 (Tex.App.-Houston [14th Dist.] 2006, no pet.). The burden rests upon the person who challenges the statute to establish its unconstitutionality. *Rodriguez*, 93 S.W.3d at 69. We must uphold the statute if we can determine a reasonable construction which will render it constitutional. *Ely v. State*, 582 S.W.2d 416, 419 (Tex.Crim.App. [Panel Op.] 1979). When an appellant challenges a statute as both unconstitutionally overbroad and vague, we address the overbreadth challenge first. *Byrum v. State*, 762 S.W.2d 685, 687 (Tex.App.-Houston [14th Dist.] 1988, no pet.).

### 2. Section 38.15 is Not Unconstitutionally Overbroad

 A statute is impermissibly overbroad if, in addition to proscribing activities that may be constitutionally prohibited, it sweeps within its coverage speech or conduct protected by the First Amendment. *Bynum v. State*, 767 S.W.2d 769, 772 (Tex.Crim.App.1989); *see also Village*

*of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982) (when there is a facial challenge to the overbreadth and vagueness of a law, the court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct). A statute will not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional applications; therefore, we will not strike down a statute for overbreadth unless there is a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court. *See Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800-01, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984) ("[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge. On the contrary, the requirement of substantial overbreadth stems from the underlying justification for the overbreadth exception itself-the interest in preventing an invalid statute from inhibiting the speech of third parties who are not before the court."). Therefore, our first task is to determine whether the interference statute reaches a substantial amount of constitutionally protected conduct. *Village of Hoffman Estates*, 455 U.S. at 494, 102 S.Ct. at 1191. If it does not, the overbreadth challenge must fail. *Id.*

Appellant asserts the interference statute is overbroad because it impermissibly restricts a person's right to walk about freely and the right to not remain silent. The interference statute provides that it is a defense to prosecution under the statute if the interruption, disruption, impediment, or interference alleged consists of speech only. TEX. PENAL CODE ANN. § 38.15(d). Therefore, we must only examine the in-

terference statute's limitations on conduct to determine if it restricts a substantial amount of constitutionally protected conduct.

■ Although the First Amendment protects speech and other forms of expressive conduct, not all forms of body movement constitute expressive conduct. *See City of Dallas v. Stanglin,* 490 U.S. 19, 25, 109 S.Ct. 1591, 1595, 104 L.Ed.2d 18 (1989) ("It is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment.") The interference statute at issue here prohibits a person, acting with criminal negligence, from interrupting, disrupting, impeding, or otherwise interfering with a peace officer, while the peace officer is performing a duty or exercising authority imposed or granted by law. TEX. PENAL CODE ANN. § 38.15(a)(1). Appellant has cited no authority, and we are aware of none, holding that conduct, which a person knew or should have known would interrupt, disrupt, impede, or interfere with a peace officer performing a duty imposed by law, such as investigating an accident or arresting a criminal suspect, is expressive conduct protected by the First Amendment. Accordingly, we hold that conduct which interrupts, disrupts, impedes, or interferes with a peace officer performing a duty imposed by law is not expressive conduct protected by the First Amendment. *See Puckett v. State,* 801 S.W.2d 188, 192 (Tex. App.-Houston [14th Dist.] 1990, pet. ref'd) ("The State of Texas undoubtedly has a valid and substantial interest in protecting the integrity of its judicial system and in allowing public servants, witnesses and prospective witnesses to perform their respective duties without interference from threats of physical violence."). As the interference statute does not restrict a substantial amount of constitutionally protected conduct, it is not unconstitutionally overbroad. We overrule appellant's second issue.

### 3. Section 38.15 is Not Unconstitutionally Vague

■ In his first issue appellant argues the interference statute is unconstitutionally vague because it fails to provide adequate notice of the prohibited conduct since it does not define what constitutes a "crime scene investigation area," or the meaning of interrupts, disrupts, impedes, or interferes. Appellant also asserts the statute is unconstitutionally vague since it gives police officers unfettered discretion to apply the statute to any person who simply annoys them.

■ A vagueness challenge is applicable to all criminal laws, not just those that regulate speech. *Webb v. State,* 991 S.W.2d 408, 416 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd). A statute will be declared unconstitutionally vague if "its prohibitions are not clearly defined." *State v. Markovich,* 77 S.W.3d 274, 279 (Tex.Crim.App.2002) (quoting *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972)). However, the vagueness doctrine is not designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited. *Webb,* 991 S.W.2d at 416. A reviewing court must make a two-part inquiry in the examination of a criminal statute for vagueness. The first inquiry is whether an ordinary, law-abiding person receives sufficient information from the statute that his conduct risks violating the criminal law. *State v. Fry,* 867 S.W.2d 398, 401 (Tex.App.-Houston [14th Dist.] 1993, no pet.). All penal laws must give

notice to the populace about what activity is made criminal to provide fair notice to persons before making their activity criminal. *Id.* (citing *Bynum,* 767 S.W.2d at 773). A criminal statute need not be mathematically precise; it need only give fair warning, in light of common understanding and practices. *Id.* (citing *Grayned,* 408 U.S. at 110, 92 S.Ct. at 2300). A statute is unconstitutionally vague only when no core of prohibited activity is defined. *Id.* (citing *Briggs,* 740 S.W.2d at 806).

■■■ The second inquiry involves a determination of whether the statute provides sufficient notice to law enforcement personnel to prevent arbitrary or discriminatory enforcement. *Id.* (citing *Bynum,* 767 S.W.2d at 773). A statute must be sufficiently definite to avoid the possibility of arbitrary and erratic arrests and convictions. *Fry,* 867 S.W.2d at 401 (citing *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972)). Either of these inquiries forms an independent basis for a finding of vagueness. *Id.* (citing *Adley v. State,* 718 S.W.2d 682, 685 (Tex.Crim.App.1985)).

■■■ When a statute, such as the interference statute at issue here, implicates no constitutionally protected conduct, a reviewing court should sustain the vagueness challenge only if the statute is impermissibly vague in all its applications. *Bynum,* 767 S.W.2d at 774. A person who engages in conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. *Id.* (citing *Village of Hoffman Estates,* 455 U.S. at 494, 102 S.Ct. at 1191). As our discussion of the sufficiency of the evidence indicates, appellant violated the interference statute and therefore, we will sustain his facial vagueness challenge only if the statute is impermissibly vague as applied to his conduct at issue here.[4] *Id.*

■■■ Appellant argues the interference statute is vague as applied to his conduct because it does not provide adequate notice of the prohibited conduct since it does not define key terms and because it gives police officers unfettered discretion to apply the statute to any person who annoys them. However, a statute is not unconstitutionally vague merely because it fails to define the words or terms used. *Fry,* 867 S.W.2d at 401. When words are not defined, they are ordinarily given their plain meaning, unless the statute clearly shows that they were used in some other sense. *Id.* at 402. In the absence of special definitions, statutory language under attack as vague can be measured by common understanding and practices or construed in the sense generally understood. *Id.* (citing *Ely,* 582 S.W.2d at 419). The terms interrupt, disrupt, impede, and interfere are all terms easily understood by persons of common intelligence. *See Webb,* 991 S.W.2d at 416 (holding the contested statutory language is not unconstitutionally vague as it conveys a sufficient warning to appellant about the proscribed conduct when measured by common understanding and prac-

---

4. Some cases analyzing the facial vagueness of a statute, treat this test, whether a statute is vague as applied to a defendant's conduct, as the first step in the examination of a facial vagueness challenge. *See Byrum v. State,* 762 S.W.2d 685, 688 (Tex.App.-Houston [14th Dist.] 1988, no pet.) (holding that since the statute at issue was not unconstitutionally vague as applied to the defendant's conduct, the appellate court did not need to address the defendant's facial vagueness challenge); *see also Sullivan v. State,* 986 S.W.2d 708, 713–14 (Tex.App.-Dallas 1999, no pet.) (holding that consideration of the vagueness of the statute as applied to the defendant's conduct was only the first stage of a two-part facial vagueness challenge required by *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). Because we find the interference statute is not vague as applied to appellant's conduct, we need not address this issue.

tice). The terms of the interference statute give a person of ordinary intelligence fair notice of the prohibited conduct: a person cannot, by actions other than speech only, affect a peace officer's performance of a legal duty or exercise of legal authority to the extent it essentially shuts down that peace officer's performance of that duty or authority. Likewise, the interference statute adequately details the prohibited conduct to the extent that the enforcement of the statute is not relegated to the subjective interpretation of the police officers on the scene. *Bynum*, 767 S.W.2d at 775. The language of the statute provides adequate guidance to law enforcement authorities to such a degree that the risk of improperly motivated selective enforcement is obviated. *Id.*

As the interference statute is not unconstitutionally vague as applied to appellant's conduct at issue in this appeal, we overrule appellant's first issue.

## CONCLUSION

Having overruled each of appellant's issues on appeal, we affirm the judgment of the trial court.