# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00669-CR

## Ex parte Justin River Carter

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2013-159, THE HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Justin River Carter was arrested and charged by indictment, in two paragraphs alleging alterative manner and means, with terroristic threat. *See* Tex. Penal Code § 22.07(a)(4), (5). He filed a pretrial application for writ of habeas corpus challenging the constitutionality of the subsections of the terroristic threat statute under which he is charged. After conducting an evidentiary hearing, the trial court denied relief. In two points of error on appeal, appellant asserts that the trial court erred by not finding the statutory subsections under which he is charged facially unconstitutional and unconstitutional as applied to him. We affirm the trial court's order denying relief.

### DISCUSSION

#### Facial Challenge

In his first point of error, appellant complains that the trial court abused its discretion in not finding subsections (a)(4) and (a)(5) of section 22.07 of the Texas Penal Code facially unconstitutional. He argues that these subsections are facially overbroad and vague in violation of

the First, Fifth, and Fourteenth Amendments to the United States Constitution and Article I of the Texas Constitution. *See* U.S. Const. amend. I, XIV; Tex. Const. art. I, §§ 8, 10, 12, 19.[1]

A claim that a statute is unconstitutional on its face may be raised by pretrial writ of habeas corpus because if the statute is facially invalid, then the charging instrument is void. *Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001); *Ex parte Joyner*, 367 S.W.3d 737, 739 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010). We generally review a trial court's decision to grant or deny an application for writ of habeas corpus under an abuse of discretion standard. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *Ex parte Ali*, 368 S.W.3d 827, 830 (Tex. App.—Austin 2012, pet. ref'd). A trial court abuses its discretion when it acts without reference to any guiding rules or principles or when it acts arbitrarily or unreasonably. *Ex parte Ali*, 368 S.W.3d at 830. However, when the trial court's ruling and determination of the ultimate issue turns on the constitutionality of a statute, we review the trial court's ruling de novo. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007); *Ex parte Perusquia*, 336 S.W.3d 270, 275 (Tex. App.—San Antonio 2010, pet. ref'd). A facial attack upon a penal statute is solely and entirely a legal question subject to de novo review. *Ex parte Lo*,

---

[1] In his argument, appellant provides authority only regarding the United States Constitution and does not provide separate authority or argument for his state constitutional claim. Because appellant does not argue that the Texas Constitution provides more protection than the United States Constitution, nor explain how it would, we properly resolve this claim pursuant to the United States Constitution. *See Gilley v. State*, 418 S.W.3d 114, 120 n.23 (Tex. Crim. App. 2014), *cert. denied*, 135 S. Ct. 57 (2014); *Flores v. State*, 319 S.W.3d 697, 702 n.8 (Tex. Crim. App. 2010); *Muniz v. State*, 851 S.W.2d 238, 251 (Tex. Crim. App. 1993); *Jessop v. State*, 368 S.W.3d 653, 681 (Tex. App.—Austin 2012, no pet.).

424 S.W.3d 10, 14 (Tex. Crim. App. 2013); *Karenev v. State*, 281 S.W.3d 428, 435 (Tex. Crim. App. 2009).

Whenever we are confronted with an attack upon the constitutionality of a statute, we generally presume that the statute is valid and that the legislature did not act unreasonably or arbitrarily.[2] *Ex parte Lo*, 424 S.W.3d at 14–15; *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013); *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002); *Webb v. State*, 109 S.W.3d 580, 582 (Tex. App.—Fort Worth 2003, no pet.); *Ex parte Dave*, 220 S.W.3d 154, 156 (Tex. App.—Fort Worth 2007, pet. ref'd). The burden rests upon the person who challenges the statute to establish its unconstitutionality. *Rousseau*, 396 S.W.3d at 557; *Rodriguez*, 93 S.W.3d at 69; *Garcia v. State*, 212 S.W.3d 877, 887 (Tex. App.—Austin 2006, no pet.). We must uphold a statute if we can determine a reasonable construction that will render it constitutional and carry out legislative intent. *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. 1979); *Garcia*, 212 S.W.3d at 887.

To prevail on a facial challenge to the constitutionality of a statute, a party generally must show the statute always operates unconstitutionally, in all possible circumstances. *Rosseau*, 396 S.W.3d at 557; *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908 (Tex. Crim. App. 2011); *see Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992) ("A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set

---

[2] We note that the usual presumption of constitutionality is reversed when the government seeks to restrict and punish speech based on its content. *Ex parte Lo*, 424 S.W.3d 10, 14–15 (Tex. Crim. App. 2013). "Content-based regulations (those laws that distinguish favored from disfavored speech based on the ideas expressed) are presumptively invalid, and the government bears the burden to rebut that presumption." *Id.* (internal citations omitted).

of circumstances exists under which the statute will be valid."). In a facial challenge to a statute's constitutionality, courts consider the statute only as it is written, not how it operates in practice. *Salinas v. State*, ___ S.W.3d ___, No. PD-0419-14, 2015 WL 3988955, at *3 (Tex. Crim. App. July 1, 2015); *State ex rel. Lykos*, 330 S.W.3d at 908.

The Penal Code provisions at issue here provide:

> (a)    A person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to:
> . . .
>
> (4)    cause impairment or interruption of public communications, public transportation, public water, gas, or power supply or other public services;
>
> (5)    place the public or a substantial group of the public in fear of serious bodily injury; . . . .

Tex. Penal Code § 22.07(a)(4), (5).

Appellant contends that the above statutory subsections of the terroristic threat statute are unconstitutionally overbroad on their face because they criminalize "a vast amount of constitutionally protected speech" in violation of the First Amendment to the United States Constitution. He also asserts that they are unconstitutionally vague because they fail to provide adequate notice of the prohibited conduct.

A statute is impermissibly overbroad if it sweeps within its coverage "a substantial amount of" speech or other conduct protected by the First Amendment as compared to any activity it proscribes. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982); *Bynum v. State*, 767 S.W.2d 769, 772 (Tex. Crim. App. 1989); *Clark v. State*,

4

665 S.W.2d 476, 482 (Tex. Crim. App. 1984); *Garcia*, 212 S.W.3d at 887. Because of the wide-reaching effects of striking down a statute on its face, at the request of one whose own conduct may be punished despite the First Amendment, the United States Supreme Court has recognized that "the overbreadth doctrine is 'strong medicine' and [courts should employ] it with hesitation, and then 'only as a last resort.'" *Goyzueta v. State*, 266 S.W.3d 126, 131 (Tex. App.—Fort Worth 2008, no pet.) (quoting *New York v. Ferber*, 458 U.S. 747, 769 (1982)); *see Garcia*, 212 S.W.3d at 887–88. Thus, we will not strike down a statute for overbreadth unless there is "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Garcia*, 212 S.W.3d at 888 (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800–01 (1984)).

The First Amendment guarantees freedom of speech, affording protection to symbolic or expressive conduct as well as to actual speech. *See* U.S. Const. amend. I; *Virginia v. Black*, 538 U.S. 343, 358 (2003). Free speech protections of the First Amendment are implicated when the government seeks to regulate protected speech or expressive conduct. *See Scott v. State*, 322 S.W.3d 662, 668–69 (Tex. Crim. App. 2010), *overruled in part on other grounds by Wilson v. State*, 448 S.W.3d 418 (Tex. Crim. App. 2014); *Ex parte Thompson*, 414 S.W.3d 872, 876 (Tex. App.—San Antonio 2013), *aff'd*, 442 S.W.3d 325 (Tex. Crim. App. 2014). The protections afforded by the First Amendment, however, are not absolute, and courts have long recognized that the government may regulate certain categories of expression consistent with the Constitution. *Black*, 538 U.S. at 358; *Walker v. State*, 327 S.W.3d 790, 796 (Tex. App.—Fort Worth 2010, no pet.); *Coggin v. State*, 123 S.W.3d 82, 87 (Tex. App.—Austin 2003, pet. ref'd). The First Amendment

5

permits "restrictions upon the content of speech in a few limited areas, which are 'of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" *Black*, 538 U.S. at 358–59; *see Walker*, 327 S.W.3d at 796; *see, e.g.*, *Black*, 538 U.S. at 358–59 (listing types of words such as "fighting words" as generally outside First Amendment" and noting that First Amendment "permits a State to ban a 'true threat'"); *R. A. V. v. City of St. Paul*, 505 U.S. 377, 388 (1992) (concluding that threats of violence are outside the First Amendment).

In analyzing a facial challenge to the overbreadth and vagueness of a statute, courts must first determine whether the statute reaches "a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates*, 455 U.S. at 494; *Garcia*, 212 S.W.3d at 887. In analyzing the text of the terroristic threat statute and making this determination here, we note the narrow applicability of the statute. By its terms, the statute punishes only those individuals who threaten to commit a crime involving violence to persons or property. *See* Tex. Penal Code § 22.07(a). This type of threat is not entitled to First Amendment protections. *See Black*, 538 U.S. at 359 (explaining that "'[t]rue threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence"); *Watts v. United States*, 394 U.S. 705, 707 (1969) (recognizing distinction between threats and constitutionally protected speech: "What is a threat must be distinguished from what is constitutionally protected speech."); *Walker*, 327 S.W.3d at 796 ("The First Amendment permits a State to ban a 'true threat.'"); *Webb v. State*, 991 S.W.2d 408, 415 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (concluding that retaliation statute does not infringe into area of constitutionally protected freedoms because

6

it regulates only threatening speech: "A threat is not protected speech."); *Jacobs v. State*, 903 S.W.2d 848, 851 (Tex. App.—Texarkana 1995, pet. ref'd) ("Threats, however, are not constitutionally protected."); *see, e.g.*, *Webb*, 109 S.W.3d at 583 ("[B]ecause pornography produced with real children is not a category of speech protected by the First Amendment, the statute's prohibition of these materials does not violate the First Amendment."); *Ex parte Dave*, 220 S.W.3d at 156 (noting that "obscene material itself . . . is not protected by the First Amendment"); *Puckett v. State*, 801 S.W.2d 188, 194 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd) (holding appellant's threats to police officer were not entitled to constitutional protection).

Because the statute is limited to threats of violence and falls outside the protections of the First Amendment, we conclude that it does not reach "a substantial amount of constitutionally protected conduct." Accordingly, we overrule appellant's overbreadth challenge. *See Village of Hoffman Estates*, 455 U.S. at 494 (if statute does not reach "a substantial amount of constitutionally protected conduct," overbreadth challenge fails); *Bynum*, 767 S.W.2d at 772–73 (overbreadth doctrine limited in context to First Amendment issues); *Goyzueta*, 266 S.W.3d at 131 ("An overbreadth attack on a statute is recognized only in the context of a First Amendment challenge.") (citing *United States v. Salerno*, 481 U.S. 739 (1987)); *see, e.g.*, *Duncantell v. State*, 230 S.W.3d 835, 843 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (concluding that because interference with public duties statute does not restrict substantial amount of constitutionally protected conduct, it is not unconstitutionally overbroad).

Also in his first point of error, appellant argues that the statutory subsections of the terroristic threat statute under which he is charged are unconstitutionally vague—that is, they fail to

give adequate notice of the prohibited conduct—because they fail to define certain terms. In particular, he contends that subsection (a)(4) of the statute is unconstitutionally vague because it does not define the phrase "other public services" and that subsection (a)(5) is unconstitutionally vague because it does not define what constitutes "the public" or "a substantial group of the public."

A vagueness challenge is applicable to all criminal laws, not just those that regulate speech. *Bynum*, 767 S.W.2d at 773; *Duncantell*, 230 S.W.3d at 844; *Webb*, 991 S.W.2d at 416. If, as we have concluded in this case, a statute does not substantially implicate constitutionally protected speech or conduct, a facial vagueness challenge is sustained only if the challenging party shows the statute to be unconstitutionally vague in all of its applications.[3] *Ex parte Ellis*, 309 S.W.3d at 80; *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007); *Duncantell*, 230 S.W.3d at 845; *see Watson v. State*, 369 S.W.3d 865, 870 (Tex. Crim. App. 2012) ("In a facial challenge to the vagueness of a law, the appellant must show that the law is impermissibly vague in all of its applications.").

A penal statute is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006); *Garcia,* 212 S.W.3d at 889. A law must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and must provide explicit standards to those who enforce and apply it. *Grayned*, 408 U.S. at 108; *see Watson*, 369 S.W.3d at 870 ("Laws

---

[3] In contrast, the vagueness doctrine "demands a greater degree of specificity than in other contexts" when a statute is capable of reaching First Amendment freedoms. *See Long v. State*, 931 S.W.2d 285, 287–88 (Tex. Crim. App. 1996); *Ex parte Perry*, No. 03-15-00063-CR, ___ S.W.3d ___, 2015 Tex. App. LEXIS 7662, at *51 (Tex. App.—Austin July 24, 2015, no pet. h.).

cannot be vague or arbitrary; they must inform a person of ordinary intelligence of what is prohibited by the law so that he may act accordingly and must provide explicit standards to those who enforce them."); *Lawrence*, 240 S.W.3d at 915 ("A statute is void for vagueness if it fails to define the criminal offense 'with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not permit arbitrary and discriminatory enforcement.'") (quoting *Holcombe*, 187 S.W.3d at 499). A vague law "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 108–09.

When considering claims of vagueness, courts have frequently referenced conducting a two-part inquiry in the examination of a criminal statute for vagueness. *See, e.g.*, *Duncantell*, 230 S.W.3d at 844; *Coggin*, 123 S.W.3d at 87; *see also Grayned*, 408 U.S. at 108. This examination is not necessarily a two-part test, but rather one inquiry encompassing two considerations: (1) clarity for the sake of providing notice to individuals of what constitutes prohibited criminal conduct, and (2) clarity for the sake of establishing standards to avoid arbitrary or improperly selective application of the statute by law enforcement. These two considerations are, in reality, two sides of the same coin.

The first side of the coin (or consideration of the inquiry) is whether an ordinary, law-abiding person receives sufficient information from the statute that his conduct risks violating the criminal law. *Duncantell*, 230 S.W.3d at 844; *Coggin*, 123 S.W.3d at 87; *see Grayned*, 408 U.S. at 108. All penal laws must give notice to the populace about what activity is made criminal to provide fair notice to persons before making their activity criminal. *Bynum*, 767 S.W.2d at 773;

9

*Duncantell*, 230 S.W.3d at 844–45. A criminal statute need not be mathematically precise; it need only give fair warning, in light of common understanding and practices. *Bynum*, 767 S.W.2d at 773 (citing *Grayned*, 408 U.S. at 110).

The second side of the coin (or consideration of the inquiry) is whether the statute is sufficiently definite to provide standards to law enforcement personnel for consistent unbiased application when enforcing the statute. *See id.* A statute must be sufficiently definite to avoid the possibility of arbitrary and erratic arrests and convictions. *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972); *Holcombe*, 187 S.W.3d at 499.

Appellant argues that the failure to define the challenged terms renders the subsections of the terroristic threat statute under which he is charged vague because they do not provide adequate notice of the prohibited conduct and they give police officers and prosecutors "too much room for interpretation" when applying the statute. However, a statute is not unconstitutionally vague merely because it fails to define words or phrases. *Morgan v. State*, 557 S.W.2d 512, 514 (Tex. Crim. App. 1997); *Engelking v. State*, 750 S.W.2d 213, 215 (Tex. Crim. App. 1988); *Coggin*, 123 S.W.3d at 88. Statutory words and phrases are to be "read in context and construed according to the rules of grammar and common usage." Tex. Gov't Code § 311.011(a); *see* Tex. Penal Code § 1.05(b) (making section 311.011 applicable to Texas Penal Code). Terms not defined in a statute are to be given their plain and ordinary meaning; words defined in dictionaries and with meanings so well known as to be understood by a person of ordinary intelligence are not to be considered vague and indefinite. *Watson*, 369 S.W.3d at 870 (citing *Floyd v. State*, 575 S.W.2d 21, 23 (Tex. Crim. App. 1978)); *Ex parte Morales*, 212 S.W.3d 483, 499 (Tex.

10

App.—Austin 2006, pet. ref'd). In the absence of special definitions, statutory language under attack as vague can be measured by common understanding and practices or construed in the sense generally understood. *Ely*, 582 S.W.2d at 419; *see Mays v. State*, 318 S.W.3d 368, 389 n.77 (Tex. Crim. App. 2010); *Celis v. State*, 354 S.W.3d 7, 36 (Tex. App.—Corpus Christi 2011), *aff'd*, 416 S.W.3d 419 (Tex. Crim. App. 2013); *State v. Wofford*, 34 S.W.3d 671, 680 (Tex. App.—Austin 2000, no pet.).

Here, the term "other public services" in subsection (a)(4) is a phrase easily understood by persons of common intelligence, particularly when taken in context with the specific types of public services listed in the subsection. Similarly, the terms "the public" and "a substantial group of the public" are easily understood by persons of common intelligence. While appellant argues that one is unable to determine what exact number of people must be placed in fear of serious bodily injury under subsection (a)(5), no specific quantity is required to communicate the prohibited conduct. *See Grayned*, 408 U.S. at 110–12 (statutory provision need not be mathematically precise; it need only give fair warning, in light of common understanding and practices). When measured by common understanding and practices and construing the challenged phases as generally understood, the subsections at issue give a person of ordinary intelligence fair notice of the prohibited conduct: a person cannot make threats to commit criminal acts of violence against persons or property with the intent to shut down or disrupt public services or with the intent to frighten others with significant physical harm. *See United States v. Petrillo*, 332 U.S. 1, 8 (1947) ("The language here challenged conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. The Constitution requires no more.").

11

Further, because these subsections of the terroristic threat statute adequately detail the prohibited conduct, the enforcement of the statute is not relegated to the subjective interpretation of police officers or prosecuting attorneys. *See Bynum*, 767 S.W.2d at 775; *Duncantell*, 230 S.W.3d at 846. The language of the statute provides adequate guidance to law enforcement authorities to such a degree that the risk of improperly motivated selective enforcement is obviated. *See Bynum*, 767 S.W.2d at 775; *Duncantell*, 230 S.W.3d at 846.

Because subsections (a)(4) and (a)(5) of the terroristic threat statute give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and provide explicit standards to those who enforce and apply the statute, we hold that these subsections are not impermissibly vague. We overrule appellant's vagueness challenge.

In conclusion, because the subsections of the terroristic threat statute under which appellant is charged—sections 22.07(a)(4) and (a)(5)—are neither overbroad nor impermissibly vague, appellant has failed to meet his burden in demonstrating that the challenged statutory subsections are facially unconstitutional.[4] Accordingly, the trial court did not abuse its discretion

---

[4] Appellant contends that the burden is on the State here to prove the validity of the challenged statutory subsections because the terroristic threat statute regulates speech based on content. *See Ex parte Lo*, 424 S.W.3d at 15 ("Content-based regulations (those laws that distinguish favored from disfavored speech based on the ideas expressed) are presumptively invalid, and the government bears the burden to rebut that presumption.") (internal citations omitted). However, the presumption-of-invalidity standard of review applies to "First Amendment, content-based statutes." *See id.* at 16. Because we conclude the challenged subsections of the terroristic threat statute do not regulate First Amendment protected speech or conduct, we apply the usual standard of review, including the presumption of the statute's validity and the challenger's burden to demonstrate the contrary.

in denying appellant's pretrial application for writ of habeas corpus on that ground. We overrule

appellant's first point of error.

**As Applied Challenge**

In his second point of error, appellant asserts that the trial court erred by not finding

Penal Code sections 22.07(a)(4) and (a)(5), the subsections of the terroristic threat statute under

which he is charged, unconstitutional as applied to him. The indictment in this case alleges, in

relevant part, that appellant:

PARAGRAPH I

did then and there, with the intent to cause impairment or interruption of public
communications, public transportation, public water, gas or public supply, or other
public service, threaten to commit any offense involving violence to any person or
property, to wit: by threatening to "shoot up a kindergarten, watch the blood rain
down and eat the beating heart out of one of them."

PARAGRAPH II

did then and there, with the intent to place the public or a substantial group of the
public in fear of serious bodily injury, threaten to commit any offense involving
violence to any person or property, to-wit: by threatening to "shoot up a kindergarten,
watch the blood rain down and eat the beating heart out of one of them."

According to the record, these allegations are based on statements appellant allegedly made on the

online social networking service, Facebook.[5] Appellant claims that, when considered in context, his

_____

[5] The record contains a screenshot purportedly from appellant's Facebook page, which
reflects a series of three statements attributed to appellant:

I'm f****d in the head alright. I think I'ma SHOOT UP A KINDERGARTEN

comments on his Facebook post were "sarcastic, hyperbolic[,] and conditional" and do not constitute a "true threat."

Pretrial habeas, followed by an interlocutory appeal, is an "extraordinary remedy," and appellate courts should be careful to ensure that it is not misused to secure pretrial appellate review of matters that should not be put before appellate courts at the pretrial stage. *Ex parte Ellis*, 309 S.W.3d at 79 (citing *Ex parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010)). Under clear Texas Court of Criminal Appeals precedent, a pretrial writ of habeas corpus may not be used to advance an "as applied" challenge to the constitutionality of the statute. *Id.*; *Ex parte Weise*, 55 S.W.3d at 620–21; *cf. Ex parte Perry*, No. 03-15-00063-CR, ___ S.W.3d ___, 2015 Tex. App. LEXIS 7662, at *22–25 (Tex. App.—Austin July 24, 2015, no pet. h.) (discussing *Ex parte Boetscher*, 812 S.W.2d 600 (Tex. Crim. App. 1991), one case in which the Texas Court of Criminal Appeals seemingly entertained a pretrial habeas of an "'as-applied-to-the-indictment'" challenge, not relevant to the challenge before us). A claim that a statute is unconstitutional "as applied" is a claim that the statute, although generally constitutional, operates unconstitutionally as to the claimant because of his particular facts and circumstances. *State ex rel. Lykos*, 330 S.W.3d at 910; *Gillenwaters v. State*, 205 S.W.3d 534, 537 n.3 (Tex. Crim. App. 2006). Consequently, an "as applied" constitutional challenge may not be resolved pretrial because it depends on development of the specific facts of the case showing how the statute is being applied to the defendant. *State ex*

---

AND WATCH THE BLOOD OF THE INNOCENT RAIN DOWN

. . .

AND EAT THE BEATING HEART OF ONE OF THEM

14

*rel. Lykos*, 330 S.W.3d at 910; *State v. Rosseau*, 398 S.W.3d 769, 778 (Tex. App.—San Antonio 2011), *aff'd*, 396 S.W.3d 550 (Tex. Crim. App. 2013).

Here, appellant's claim that his comments, when taken in context, do not suffice to constitute a "true threat," clearly raises an "as applied" challenge to the constitutionality of Penal Code sections 22.07(a)(4) and (a)(5), the resolution of which is dependent on the facts of the case—which have yet to be developed through trial. *See State ex rel. Lykos*, 330 S.W.3d 910 ("An 'as applied' challenge is brought during or after a trial on the merits, for it is only then that the trial judge and reviewing courts have the particular facts and circumstances of the case needed to determine whether the statute or law has been applied in an unconstitutional manner."); *Flores v. State*, 245 S.W.3d 432, 442 (Tex. Crim. App. 2008) (Cochran, J., concurring) ("[A]n attack upon the constitutionality of a statute as it is applied in the particular case depends upon the specific facts of that case adduced at trial. Thus, a challenge to the constitutionality of a penal statute 'as applied' to the defendant can be made only after all of the evidence is heard."). Accordingly, we conclude that appellant's "as applied" challenge is not cognizable on a pretrial writ. *See Ex parte Ellis*, 309 S.W.3d at 81–82 (appellate court should not have addressed whether money-laundering statute applies to checks because claim raised as-applied challenge to statute and was thus not cognizable in pretrial habeas proceedings); *Ex parte Weise*, 55 S.W.3d at 621 (claim that illegal-dumping statute was unconstitutional as applied to the defendant was not cognizable on pretrial writ of habeas corpus). We overrule appellant's second point of error.

15

## CONCLUSION

Having overruled appellant's two points of error, we affirm the trial court's order denying appellant's pretrial application for writ of habeas corpus.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:   August 31, 2015

Do Not Publish

16