FILED IN
COURT OF CRIMINAL APPEALS

October 22, 2015

ABEL ACOSTA, CLERK

PD-1067-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/21/2015 9:09:44 PM
Accepted 10/22/2015 8:12:16 AM
ABEL ACOSTA
CLERK

## NO. PD-1067-15

IN THE
COURT OF CRIMINAL APPEALS OF TEXAS

## EX PARTE JAMES RICHARD "RICK" PERRY,
### Appellant

_____

On Appeal from the 390th Judicial District Court,
Travis County, Texas, Cause No. D-1-DC-14-100139

_____

## APPELLANT'S BRIEF ON THE MERITS ADDRESSING
## THE STATE'S PETITION FOR DISCRETIONARY REVIEW

_____

THE BUZBEE LAW FIRM
Anthony G. Buzbee
State Bar No. 24001820
JPMorgan Chase Tower
600 Travis Street, Suite 7300
Houston, Texas 77002
Tbuzbee@txattorneys.com
Telephone:  713-223-5393
Facsimile:  713-223-5909

BAKER BOTTS L.L.P.
Thomas R. Phillips
State Bar No. 00000102
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701-4078
tom.phillips@bakerbotts.com
Telephone:  512-322-2565
Facsimile:   512-322-8363

BOTSFORD & ROARK
David L. Botsford
State Bar No. 02687950
1307 West Ave.
Austin, Texas 78701
dbotsford@aol.com
Telephone:  512-479-8030
Facsimile:   512-479-8040

**ORAL ARGUMENT PREVIOUSLY SCHEDULED BY THE COURT**

## Identity of Judge, Parties, and Counsel

The following is a complete list of the names and addresses of all parties and counsel in this case.

Trial Judge: Honorable Bert Richardson, sitting by appointment; Court of Criminal Appeals, Supreme Court Building, 201 West 14th Street, Austin, Texas, 78701.

Appellant: Former Governor James Richard "Rick" Perry, c/o Anthony G. Buzbee, JPMorgan Chase Tower, 600 Travis Street, Suite 7300, Houston, Texas 77002.

Appellant's Counsel: Anthony G. Buzbee, JPMorgan Chase Tower, 600 Travis Street, Suite 7300, Houston, Texas 77002; Thomas R. Phillips, 98 San Jacinto Blvd., Suite 1500, Austin, Texas 78701-4078; and David L. Botsford, 1307 West Avenue, Austin, Texas, 78701 (Lead Counsel on Appeal).

State of Texas: Attorney Pro Tem Michael McCrum, 700 N. Saint Mary's Street, Suite 1900, San Antonio, Texas 78205; Assistant Attorney Pro Tem David Gonzalez, 206 East 9th Street, Suite 1511, Austin, Texas, 78701.

# Table of Contents

Identity of Judge, Parties, and Counsel......................................................... i

Index of Authorities ............................................................................... iv

Statement of the Case................................................................................1

Grounds for Review ..................................................................................3

Statement of the Facts................................................................................4

    A.    Proceedings in the district court....................................................4

    B.    B. Proceedings in the court of appeals ......................................6

Summary of the Argument.......................................................................10

Argument.................................................................................................12

    A.    Introduction ................................................................................12

    B.    The court of appeals opinion correctly analyzed and decided
            Governor Perry's First Amendment challenges................................13

            1.    First Amendment Principles .......................................13

            2.    The Statutory Framework ...........................................15

            3.    The court of appeals was faithful to this Court's binding
                  precedents...................................................................18

            4.    Section 36.03(a)(1), as it incorporates the definition of
                  "coercion" from Section 1.07(a)(9)(F), implicates the
                  First Amendment.........................................................20

            5.    The State's arguments that the statutes do not implicate
                  the First Amendment are without merit...................................20

                  a.    The State's cases are distinguishable ...........................21

                  b.    The court of appeals was correct that Governor
                        Perry did not lose his First Amendment rights by
                        holding public office...................................................25

6. Section 36.03(a)(1), as it incorporates the definition of "coercion" from Section 1.07(a)(9)(F), is a content-based restriction on speech...................................................................31

7. Section 36.03(a)(1), as it incorporates the definition of "coercion" from Section 1.07(a)(9)(F), fails to satisfy "strict scrutiny" .......................................................................33

C. Even if the court of appeals erred in its reasoning, its judgment was correct for other reasons............................................................35

1. Section 36.03(a)(1), as it incorporates the definition of "coercion" from Section 1.07(a)(9)(F), is overbroad ...............35

2. The statutory scheme is facially void for vagueness ................46

Prayer for Relief.................................................................................................52

Certificate of Compliance ...................................................................................54

Certificate of Service ..........................................................................................54

# Index of Authorities

**Page(s)**

CASES

*All. to End Repression v. City of Chicago,*
742 F.2d 1007 (7th Cir. 1984) ..................................................................................37

*Ashcroft v. A.C.L.U.,*
535 U.S. 564 (2002)....................................................................................................32

*Ashcroft v. Am. Civil Liberties Union,*
542 U.S. 656 (2004)..............................................................................................14, 15

*Bd. v. State,*
No. 03-96-00024-CR, 1998 WL 271043 (Tex. App.—Austin May 29, 1998,
pet. ref'd) (not designated for publication) .................................................................22

*Bond v. Floyd,*
385 U.S. 116 (1966)....................................................................................................27

*Broadrick v. Oklahoma,*
413 U.S. 601 (1973)..............................................................................................43, 44

*Brown v. Entm't Merchants Ass'n,*
131 S. Ct. 2729 (2011)..........................................................................................13, 33

*Carey v. Brown,*
447 U.S. 455 (1980)....................................................................................................24

*City of Seattle v. Ivan,*
856 P.2d 1116 (Wash. App. 1993)..............................................................................38

*Colautti v. Franklin,*
439 U.S. 379 (1979)....................................................................................................49

*Collection Consultants, Inc. v. State,*
556 S.W.2d 787 (Tex. Crim. App. 1977).....................................................................42

*Connick v. Myers,*
461 U.S. 138 (1983)....................................................................................................26

*Crouch v. Civil Serv. Comm'n of Tex. City,*
459 S.W.2d 491 (Tex. Civ. App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.)....................50

*Duncantell v. State,*
    230 S.W.3d 835 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) ..............................22, 23

*Ely v. State,*
    582 S.W.2d 416 (Tex. Crim. App. 1979).................................................................................47

*Ex parte Lo,*
    424 S.W.3d 10 (Tex. Crim. App. 2013).......................................................................... *passim*

*Ex parte Thompson,*
    442 S.W.3d 325 (Tex. Crim. App. 2014)........................................................................ *passim*

*Garcetti v. Ceballos,*
    547 U.S. 410 (2006)...............................................................................................................26

*Garrison v. La.,*
    379 U.S. 64 (1964).................................................................................................................41

*Gooding v. Wilson,*
    405 U.S. 518 (1972)...............................................................................................................48

*Grayned v. Rockford,*
    408 U.S. 104 (1972)...............................................................................................................47

*Jenevein v. Willing,*
    493 F.3d 551 (5th Cir. 2007) .................................................................................................27

*Johanns v. Livestock Mktg. Ass'n,*
    544 U.S. 550 (2005).........................................................................................................28, 29

*Kramer v. Price,*
    712 F.2d 174 (5th Cir. 1983) .................................................................................................47

*Long v. State,*
    931 S.W.2d 285 (Tex. Crim. App. 1991)...................................................................47, 48, 49

*McIntyre v. Ohio Elections Comm'n,*
    514 U.S. 334 (1995)...............................................................................................................13

*Meyer v. Grant,*
    486 U.S. 414 (1988).........................................................................................................13, 41

*N.A.A.C.P v. Claiborne Hardware Co.,*
    458 U.S. 886 (1982)...................................................................................................23, 24, 37

*N.Y. Times Co. v. Sullivan,*
    376 U.S. 254 (1964)...............................................................................................................13

*Olivas v. State,*
    203 S.W.3d 341 (Tex. Crim. App. 2006)...................................................................20, 50

*Org. for a Better Austin v. Keefe,*
    402 U.S. 415 (1971)........................................................................................24, 30

*Papachristou v. City of Jacksonville,*
    405 U.S. 156 (1971)................................................................................................47

*People v. Iboa,*
    207 Cal. App. 4th 111 (2012) ...............................................................................39

*Phillips v. State,*
    401 S.W.3d 282 (Tex. App.—San Antonio 2013, pet. ref'd)........................30, 40

*Pleasant Grove City v. Summum,*
    555 U.S. 460 (2009)........................................................................................28, 29

*Puckett v. State,*
    801 S.W.2d 188 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd) ........21, 22, 42

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992)..............................................................................13, 19, 33

*Reed v. Town of Gilbert, Ariz.,*
    135 S. Ct. 2218 (2015)...........................................................................................32

*Reno v. Am. Civil Liberties Union,*
    521 U.S. 844 (1997)................................................................................................15

*Roberts v. State,*
    278 S.W.3d 778 (Tex. App.—San Antonio 2008, pet. ref'd)..........................42, 51

*Sanchez v. State,*
    995 S.W.2d 677 (Tex. Crim. App. 1999)....................................24, 25, 36, 42

*Schaumburg v. Citizens for a Better Env't,*
    444 U.S. 620 (1980)................................................................................................43

*Sorrell v. IMS Health,*
    131 S.Ct. 2653 (2011)....................................................................................13, 33

*State v. Hanson,*
    793 S.W.2d 270 (Tex. App.—Waco 1990, no pet.)....................37, 45, 46, 48, 51

*State v. Johnson,*
    ___ S.W.3d ___, No. PD-0228-14, 2015 WL 5853115 (Tex. Crim. App.
October 7, 2015) ................................................................................................18, 19

*State v. Pauling*,
   69 P.3d 331 (Wash. 2003)................................................................................39

*State v. Robertson*,
   649 P.2d 569 (Or. 1982) ................................................................................38

*State v. Strong*,
   272 P.3d 281 (Wash. App. 2012)....................................................................36

*State v. Weinstein*,
   898 P.2d 513 (Ariz. Ct. App. 1995)..........................................................37, 38

*Tobias v. State*,
   884 S.W.2d 571 (Tex. App.—Fort Worth 1994, pet. ref'd) ...............30, 34, 42, 51

*U.S. ex rel. Holder v. Circuit Court of 17th Judicial Circuit*,
   624 F. Supp. 68 (N.D. Ill. 1985) ................................................................36, 38

*United States v. Coss*,
   677 F.3d 278 (6th Cir. 2012) ..........................................................................36

*United States v. Jackson*,
   180 F.3d 55 (2d Cir. 1999)..........................................................................37, 39

*United States v. Playboy Entm't Grp., Inc.*,
   529 U.S. 803 (2000)...................................................................................13, 33

*United States v. Stevens*,
   559 U.S. 460 (2010)...........................................................................14, 20, 44, 45

*United States v. Velasquez*,
   772 F.2d 1348 (7th Cir. 1985) ........................................................................37

*United States v. Williams*,
   553 U.S. 285 (2008)...................................................................................14, 26

*Van Arsdel v. Tex. A&M Univ.*,
   628 F.2d 344 (5th Cir. 1980) ..........................................................................50

*Virginia v. Black*,
   538 U.S. 343 (2003)..............................................................................13, 23, 36

*Virginia v. Hicks*,
   539 U.S. 113 (2003)........................................................................................43

*Walker v. Tex. Division, Sons of Confederate Veterans, Inc.*,
   135 S. Ct. 2239 (2015)....................................................................................28

*Wash. State Grange v. Wash. State Republican Party*,
552 U.S. 442 (2008)..............................................................................................14

*Watts v. United States*,
394 U.S. 705 (1969).....................................................................................20, 23, 36

*Whimbush v. People*,
869 P.2d 1245 (Colo. 1994)................................................................................38

*Willborn v. Deans*,
240 S.W.2d 791 (Tex. Civ. App.—Austin 1951, writ ref'd n.r.e.).........................................50

*Wood v. Georgia*,
370 U.S. 375 (1962)............................................................................................27

*Wurtz v. Risley*,
719 F.2d 1438 (9th Cir. 1983) ......................................................................36, 38

**STATUTES**

Tex. Penal Code § 1.07(a)(9)(F) ........................................................................ *passim*

Tex. Penal Code § 1.07(a)(41)................................................................................17

Tex. Penal Code § 1.07(a)(48)...........................................................................21, 39, 43, 51

Tex. Penal Code § 36.03(a)(1)............................................................................ *passim*

Tex. Penal Code § 36.03(c)....................................................................................18

Tex. Penal Code § 36.06(a)...........................................................................39, 42, 52

Tex. Penal Code § 42.07(a)(2)................................................................................42

**OTHER AUTHORITIES**

Tex. R. App. P. 47.7............................................................................................22

LAWRENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW § 12-32 (2d ed. 1988)..........................14

U.S. Const. amend. I .............................................................................................13

**TO THE COURT OF CRIMINAL APPEALS OF TEXAS:**

COMES NOW Appellant, James Richard "Rick" Perry (Governor Perry), and pursuant to the Court's Order of October 7, 2015, presents his brief on the merits addressing the State's petition for review, and would respectfully show this Honorable Court the following:

## Statement of the Case

In August 2014, a two-count indictment was returned against Governor Perry for violating Sections 36.03(a)(1), 1.07(a)(9)(F) (Count II, coercion of public servant), and 39.02(a)(2) (Count I, abuse of official capacity) of the Texas Penal Code by threatening to exercise, and then actually exercising, the authority to veto appropriations vested in the Governor by the Texas Constitution. CR4-5. Ten days after the indictment, Governor Perry filed an application for pretrial writ of habeas corpus contesting the legality of his restraint and seeking to bar his prosecution on both counts, primarily on constitutional grounds. CR11-70.

After the district court denied relief, CR464-84, Perry appealed to the Third Court of Appeals, which ordered expedited briefing and denied the State's request for oral argument. In a published opinion, that court held that all nine constitutional challenges to Count I and seven constitutional challenges to Count II were not cognizable because they were not "facial," merely "as applied." Slip Op. at 10-32. The court then granted relief on Count II because the statute was facially invalid

1

under the First Amendment. *Id.* at 32-97. The court thus found it unnecessary to address Perry's cognizable, facial vagueness challenge to the statute. *Id.* at 97.

Governor Perry filed his petition for discretionary review on August 18, 2015, presenting four grounds challenging the decision that Count I was not cognizable on pretrial habeas. Two weeks later, the State Prosecuting Attorney filed her petition for discretionary review attacking the court of appeals' decision that Count II was facially invalid under the First Amendment. On October 7, 2015, this Court granted both petitions, set an expedited briefing schedule, and ordered separate arguments on each petition.

## Grounds for Review

1.    Did the court of appeals incorrectly conflate the tests for First Amendment overbreadth and traditional First Amendment facial unconstitutionality?

2.    Applying the definition of "coercion" from Tex. Penal Code § 1.07(a)(9)(F), does the Coercion of a Public Servant statute ban a substantial amount of constitutionally protected speech relative to its plainly legitimate sweep?

## Statement of Facts

### A.     Proceedings in the district court

On August 15, 2014, a Travis County grand jury returned a two-count indictment against then-Governor James Richard "Rick" Perry alleging that Governor Perry broke the law by threatening to veto an item of appropriations and subsequently issuing a veto.  CR4-5.[1]

Count II, alleging that Governor Perry committed Coercion of a Public Servant under Sections 36.03(a)(1) and 1.07(a)(9)(F) of the Texas Penal Code, states:

> Beginning on or about June 10, 2013, and continuing through June 14, 2013, in the County of Travis, Texas, by means of coercion, to wit: threatening to veto legislation that had been approved and authorized by the Legislature of the State of Texas to provide funding for the continued operation of the Public Integrity Unit of the Travis County District Attorney's Office unless Travis County District Attorney Rosemary Lehmberg resigned from her official position as elected District Attorney, James Richard "Rick" Perry, intentionally or knowingly influenced or attempted to influence Rosemary Lehmberg, a public servant, namely, the elected District Attorney for Travis County, Texas, in the specific performance of her official duty, to wit: the duty to continue to carry out her responsibilities as the elected District Attorney for the county of Travis, Texas through the completion of her elected term of office, and the defendant and Rosemary Lehmberg were not members of the same governing body of a governmental entity, such offense having been committed by defendant, a public servant, while acting in such an official capacity

---

[1]     Count I, which is not implicated by either of the grounds for review in the State's petition for discretionary review, alleges that Governor Perry committed Abuse of Official Capacity under Section 39.02(a) of the Texas Penal Code. CR4-5.  The gist of this count is that Governor Perry "misused" government property by vetoing funding for the Travis County Public Integrity Unit ("PIU"). CR4-5.

4

as a public servant.

CR5. The gist of this charge is that he attempted to "influence" Travis County District Attorney Rosemary Lehmberg by threatening to veto funding for the PIU. *Id.*[2]

On August 19, 2014, Governor Perry was processed by the Travis County Sheriff and released on bond pending trial. CR8-10.

On August 25, 2014, Governor Perry filed an Application for Pretrial Writ of Habeas Corpus (the "Application"). He challenged the legality of his restraint and specifically sought "to bar the prosecution" on both counts. CR11, 49. The Application presented eleven constitutional claims as to Count II, CR17-19.[3]

The district court gave the State almost three months to respond, which it did on November 7, 2014. CR274. Governor Perry filed a reply on November 17, 2014. CR391.

Fourteen nationally-known constitutional scholars filed an *amicus curiae* brief in support of Governor Perry's Application. CR367-90. The *amici* supported Governor Perry's prayer for dismissal of Count II on the ground that the statutory provisions, read together, criminalize speech protected by the First Amendment

---

[2]    In April 2015, the State conceded that the threat of the veto was "not a true threat." *See* April 27, 2015 Supplemental Clerk's Record at 88. Furthermore, the district court has interpreted Count II as alleging a Class A misdemeanor offense, as opposed to a third degree felony as contended by the State. CR441.

[3]    These eleven claims are also set forth in the court of appeals opinion at 7-8.

and are facially invalid. CR384-89.

On January 27, 2015, the district court denied the Application without a hearing. CR464-84. The court rejected Governor Perry's facial challenges to Section 36.03(a)(1), as it incorporates the definition of "coercion" contained in Section 1.07(a)(9)(F).[4] The district court, "in an abundance of precaution," CR475, applied a strict scrutiny analysis because of the "presumption of invalidity" associated with a content based restriction on speech, citing *Ex parte Lo*, 424 S.W.3d 10, 14-18 (Tex. Crim. App. 2013). CR475. Despite this heightened standard, the court held that the provisions were not facially unconstitutional under the First Amendment or the Fourteenth Amendment. CR474-84.[5]

## B. Proceedings in the court of appeals

Governor Perry timely appealed to the Third Court of Appeals. The constitutional scholars (with some additions) who had filed an amicus curiae brief in the district court renewed their support of Governor Perry's prayer for dismissal of Count II. Amici urged the same two grounds as it had in the district court. On

---

[4]   These challenges were Governor Perry's claims 1-4 as to Count II.

[5]   The court ruled that the remainder of Governor Perry's constitutional challenges to both counts were not cognizable in a pretrial habeas proceeding because they supposedly raised merely as-applied, rather than facial, constitutional challenges. CR468-73. While the court acknowledged that these arguments were "compelling" and "may be relevant at a later time," it declined to reach their merits on the mistaken belief that "the court's hands are tied" under existing case law regarding cognizability. CR472-73. Furthermore, the district court held that Governor Perry's one statutory challenge to Count II was not cognizable in a pretrial habeas proceeding, CR482, but the district court sustained this same statutory challenge in ruling on Governor Perry's motion to quash. CR459-62 (sustaining challenge to Count II for failing to

6

July 24, 2015, the court of appeals issued an opinion and judgment.

The court of appeals began its analysis by construing the challenged statutes, noting that "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." Slip Op. at 39. The court's extensive analysis, *id.* at 39-61, led it to conclude that Section 36.03(a)(1) was a far more expansive criminal prohibition on speech than the district court had believed. *Id.* at 60. It also concluded that "it is this vast breadth that causes section 36.03(a)(1), as it incorporates paragraph (F), to impinge upon substantial amounts of First Amendment-protected speech among Texas's public servants." *Id.* at 60-61.

Then, the court considered whether the speech prohibited by the statutory scheme was in fact protected by the First Amendment. *Id.* at 61 *et seq.* Applying recognized First Amendment case law, it concluded that the statutory scheme criminalized "core political speech," which includes "speech by public servants regarding their official actions that is aimed at prompting other public servants to undertake official action." *Id.* at 62. Because the First Amendment's protections are at their "zenith" for such speech, *id.*, the court rejected the State's arguments that public servants like Governor Perry have either no First Amendment rights at all or limited rights that can be restricted by law. *Id.* at 63-71. The court also concluded that none of the historical exceptions to First Amendment protections,

---

negate statutory exception and granting State leave to amend).

7

such as the exception for speech that is integral to criminal conduct, apply here. *Id.* at 71-85.[6]

Next, the court addressed whether the statutory scheme's "impingement" on First Amendment rights "can be justified." *Id.* at 85. Because Section 36.03(a)(1) "targets speech having a specified content (communicated intent to inflict one of the six categories of harms enumerated in the 'coercion' definition) based on the communicative impact the threat has or is intended to have (bringing about certain specified conduct of a public servant)," the court concluded that it "must be classified as a 'content-based' speech prohibition—on its face." *Id.* at 85-86. Thus, the State bore the burden to rebut the presumption of invalidity by showing that the statutory scheme satisfies the applicable "strict scrutiny" standard. *Id.* at 86.

Accordingly, the State had to prove that the statutory scheme "[is] (1) necessary to serve (2) a compelling state interest and (3) [is] narrowly drawn (i.e., that it employ[s] the least restrictive means to achieve its goal and there [is] a close nexus between the government's compelling interest and the restriction)." *Id.* Although the court "assum[ed] without deciding" that the State's "asserted interests would rise to the level of 'compelling,'" it concluded that "section

---

[6] The court concluded that "[t]hese kinds of threats are 'speech incident to criminal conduct' only if the basic workings of government are considered criminal conduct, a proposition we cannot sanction." Slip Op. at 82. The court noted that the State's attempt to characterize "these threats as 'coercive'" so as to "displace them from the First Amendment protections" ran afoul of Supreme Court precedent that "'offensive' and 'coercive' speech [is] nevertheless protected by the First Amendment." *Id.* at 82 & n.269.

8

36.03(a)(1), as it incorporates paragraph (F)" is not "'narrowly drawn' to achieve those objectives." *Id.* at 87. The court reasoned that it "begins to strain even rational-basis scrutiny to conclude that a statute that goes as far as to criminalize a public servant's threat merely to lawfully exercise his delegated powers as a related consequence of another public servant's failure or refusal to comply with a lawful demand for action would protect 'the integrity' of government or prevent 'interference' with public servants' performance of their delegated functions." *Id.* at 87-88. Indeed, "[i]f anything, the effect of the statutes in those circumstances would be to undermine these interests by criminalizing much of the ordinary day-to-day workings of government. And to the extent the unique circumstances of the judicial process might justify the prosecution as it would apply in that context," the statutory "proscription extends far more broadly." *Id.* at 88.

The court also concluded that Section 36.03(a)(1), as it incorporates 1.07(a)(9)(F), was not "necessary" to effectuate the State's interests. *Id.* Noting Governor Perry's comparisons to this Court's opinion in *Ex parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013), the court "agree[d] that while some applications of section 36.03(a)(1) and paragraph (F) may be permissible or justified under the First Amendment, *Lo's* rationale would be an additional reason for invalidating the statute as to other applications." *Id.* at 88-89.

The court then addressed whether the "'alarming' breadth" of the statutory

9

scheme, "reaching even a public servant's declared intention to take or withhold action lawfully, aimed at bringing about another public servant's lawful action that the first public servant could lawfully demand or require," *id.* at 88, could be saved by any "reasonable narrowing construction." *Id.* at 91. Finding a plausible narrowing construction to be legally untenable, *id.* at 89-96, the court held that "section 36.03(a)(1), as it incorporates paragraph (F) of the Penal Code's 'coercion' definition, is facially invalid under the First Amendment and is thus unenforceable." *Id.* at 97. And "[b]ecause this holding entitles Perry to habeas relief with respect to Court II of the indictment," the court decided that it "need not address his remaining arguments." *Id.*

## Summary of the Argument

The court of appeals correctly analyzed and decided Governor Perry's First Amendment challenges to Section 36.03(a)(1), as it incorporates the definition of "coercion" in Section 1.07(a)(9)(F): a "threat, however communicated" "to take or withhold action as a public servant." The court properly concluded that the statutory scheme criminalizes all statements by public servants that threaten *lawful* action and merely have the effect of influencing another public servant. The court properly found this scheme criminalized only speech, not conduct. And it also properly concluded that the statutory scheme penalizes not unprotected speech, but "core political speech" for which First Amendment's protections are at their "zenith."

10

The State's arguments that the statutory scheme does not implicate the First Amendment were properly rebuffed by the court of appeals. The speech criminalized by the statutes does not fall into any historical exception to the First Amendment. The statutory scheme does not require a "true threat:" "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence." Nor does it require a threat of "unlawful" action, and it does not apply to speech that is integral to criminal conduct.

The court of appeals also properly rejected the State's arguments that Governor Perry's speech was "governmental speech" exempt from the protections of the First Amendment and that he himself has no First Amendment rights because he was a public servant.

Importantly, the appeals court faithfully followed this Court's prior opinions by concluding that the statutory scheme was a content-based restriction on First Amendment rights. Recognizing the presumption of invalidity and corresponding strict scrutiny standard that apply to content-based restrictions, the appeals court properly found that the statutory scheme was not necessary to serve any state interests. And before invalidating the statutory scheme, the appeals court properly examined whether the breadth of its proscriptions are capable of any narrowing construction. Simply stated, the court of appeals reached an undeniably correct result, even without addressing Governor Perry's facial vagueness arguments.

11

**Argument**

A.    **Introduction**

The State's grounds for review ask whether the court of appeals erred in holding that Section 36.03(a)(1), as it incorporates the definition of "coercion" contained in Section 1.07(a)(9)(F), "is facially unconstitutional under the First Amendment overbreadth doctrine." State PDR at 2.

Governor Perry urges this Court to affirm the judgment of the court of appeals on precisely the grounds set forth in the court of appeals' opinion. It correctly mirrors the analysis used by this Court in its recent pronouncements, and accurately analyzes the statutory scheme and legal issues attendant to its conclusion that "section 36.03(a)(1), as it incorporates paragraph (F) of the Penal Code's 'coercion' definition, is facially invalid under the First Amendment and is thus unenforceable." Slip Op. at 97. Additionally, since the court of appeals declined to address Governor Perry's facial vagueness claims, this Court should consider whether the grant of discretionary review was improvidently granted since, if this Court reverses the court of appeals' decision on Count II, the merits of the unaddressed, cognizable and dispositive facial vagueness challenge will still have to be addressed by this Court or the court of appeals.

**B. The court of appeals opinion correctly analyzed and decided Governor Perry's First Amendment challenges**

**1. First Amendment Principles**

The First Amendment, which has been incorporated by the Due Process Clause of the Fourteenth Amendment to apply to the states, *e.g.*, *Virginia v. Black*, 538 U.S. 343, 358 (2003), provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Core political speech, such as the alleged statement by Governor Perry that he would exercise his veto power if Lehmberg did not resign her office, lies at the very heart of First Amendment protection. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995) (courts must apply "exacting scrutiny" to laws burdening core political speech); *Meyer v. Grant*, 486 U.S. 414, 425 (1988) (First Amendment protection is "at its zenith" for core political speech). This heightened protection stems from our "profound national commitment" to the principle that "debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). "Content-based regulations are presumptively invalid, and it is rare that a regulation restricting speech because of its content will ever be permissible." *Ex parte Thompson*, 442 S.W.3d 325, 348 (Tex. Crim. App. 2014) (citing *Sorrell v. IMS Health*, 131 S.Ct. 2653, 2667 (2011) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992)) and *Brown v. Entm't Merchants Ass'n*, 131 S. Ct. 2729 at 2738 (2011) (citing *United States v. Playboy Entm't Grp., Inc.*, 529

13

U.S. 803, 818 (2000); *Ex parte Lo*, 424 S.W.3d at 15.

To succeed in a typical facial attack, a defendant must establish "that no set of circumstances exists under which [the statute] would be valid," or that the statute lacks any "plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472 (2010) (citations and quotation omitted). However, in the context of the First Amendment, the Supreme Court recognizes "a second type of facial challenge," whereby a law may be invalidated as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* at 473 (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (internal quotation marks omitted)). Thus, a statute is facially unconstitutional and violates the overbreadth doctrine if "it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008). A law that is overbroad cannot be validly applied against any individual. LAWRENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW § 12-32, 1036 (2d ed. 1988). Courts must not "uphold an unconstitutional statute merely because the Government promised to use it responsibly." *Thompson*, 442 S.W.3d at 350 (quoting *Stevens*, 559 U.S. at 480).

In addition, a statute regulating the content of speech is subject to "strict scrutiny" and will be invalidated unless it constitutes the "least restrictive means" of effectuating a "compelling [state] interest." *Ashcroft v. Am. Civil Liberties*

14

*Union*, 542 U.S. 656, 658, 666 (2004); *Ex parte Lo*, 424 S.W.3d at 19; *Ex parte Thompson*, 442 S.W.3d at 348. A statute that prohibits protected speech "is unacceptable if less restrictive alternatives would be at least as effective in achieving the legitimate purpose that the statute was enacted to serve," and "the burden is on the Government to prove that the proposed alternatives will not be as effective as the challenged statute." *Ashcroft*, 542 U.S. at 665 (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 874 (1997).

### 2. The Statutory Framework

The first step in evaluating Governor Perry's facial challenges requires an examination of the relevant statutory language. Section 36.03, entitled "Coercion of Public Servant or Voter," provides the following:

(a) A person commits an offense if by means of coercion he:

> (1) influences or attempts to influence a public servant in a specific exercise of his official power or a specific performance of his official duty or influences or attempts to influence a public servant to violate the public servant's known legal duty; or

> (2) influences or attempts to influence a voter not to vote or to vote in a particular manner.

(b) An offense under this section is a Class A misdemeanor unless the coercion is a threat to commit a felony, in which event it is a felony of the third degree.

(c) It is an exception to the application of Subsection (a)(1) of this section that the person who influences or attempts to influence the public servant is a member of the governing body of a governmental entity, and that the action that influences or attempts to influence the public servant is an

15

official action taken by the member of the governing body. For the purposes of this subsection, the term "official action" includes deliberations by the governing body of a governmental entity.

Coercion, as used in Section 36.03(a)(1), is defined in Section 1.07(a)(9) of the Texas Penal Code as follows:

(9) "Coercion" means a threat, however communicated:

(A) to commit an offense;

(B) to inflict bodily injury in the future on the person threatened or another;

(C) to accuse a person of any offense;

(D) to expose a person to hatred, contempt, or ridicule;

(E) to harm the credit or business repute of any person; or

(F) to take or withhold action as a public servant, or to cause a public servant to take or withhold action.

The term "public servant" is defined in Section 1.07(a)(41) of the Texas Penal Code as follows:

(41) "Public servant" means a person elected, selected, appointed, employed, or otherwise designated as one of the following, even if he has not yet qualified for office or assumed his duties:

(A) an officer, employee, or agent of government;

(B) a juror or grand juror; or

(C) an arbitrator, referee, or other person who is authorized by law or private written agreement to hear or determine a cause or controversy; or

16

(D) an attorney at law or notary public when participating in the performance of a governmental function; or

(E) a candidate for nomination or election to public office; or

(F) a person who is performing a governmental function under a claim of right although he is not legally qualified to do so.

The statutory language that forms the basis for Count II is written in broad strokes. It begins with Section 36.03(a)(1), which makes it a crime to coerce a public servant. An individual commits an offense if he or she, "by means of coercion . . . influences or attempts to influence a public servant in a specific exercise of his official power or a specific performance of his official duty or influences or attempts to influence a public servant to violate the public servant's known legal duty." Tex. Penal Code § 36.03(a)(1). "Coercion" is then defined in the definition section of the Penal Code as "a threat, however communicated," to do six distinct things, including "to take or withhold action as a public servant, or to cause a public servant to take or withhold action." *Id.* § 1.07(a)(9)(F). "Public servant" is also defined broadly to encompass all aspects of state government, including any "officer, employee, or agent of government," "a juror or grand juror," "an arbitrator," a political candidate, and even "an attorney at law or notary public when participating in the performance of a government function." *Id.* § 1.07(a)(41). Against this expansive sweep, the coercion statute contains a single, narrow exception, for "member[s] of the governing body of a governmental entity"

17

when they take "official action." *Id.* § 36.03(c).

### 3. The court of appeals was faithful to this Court's binding precedents.

The court of appeals' opinion closely mirrors the structure and legal analysis utilized by this Court in *Ex parte Lo*, *supra*, *Ex parte Thompson*, *supra*, and *State v. Johnson*, ___ S.W.3d ___, No. PD-0228-14, 2015 WL 5853115 (Tex. Crim. App. October 7, 2015). That opinion correctly applies well established First Amendment jurisprudence from these and other cases.

*Lo* involved a pretrial writ of habeas corpus alleging that a specific subsection of the felony offense of online solicitation of a minor (Section 33.0121(b) of the Texas Penal Code) was facially unconstitutional. 424 S.W.2d at 14-15. *Lo* determined that the statute was a "content-based" regulation of speech, and therefore applied the constitutionally required presumption of invalidity and the corresponding "strict scrutiny" test. *Id*. The Court concluded that the statute is "overbroad because it prohibits a wide array of constitutionally protected speech and is not narrowly drawn to achieve only the legitimate objective of protecting children from sexual abuse." *Id*. at 14.

*Thompson* also involved a pretrial writ of habeas corpus alleging that a specific subsection of the improper photography statute (Section 21.15(b)(1) of the Texas Penal Code) was facially unconstitutional in violation of the First Amendment. 442 S.W.3d at 331. This Court agreed, holding that the statute was a

18

"content-based" regulation of speech that did not satisfy "strict scrutiny" because it is not "the least restrictive means of achieving the compelling government interest in question." *Id*. at 348-349. The Court then, out of "an abundance of caution," engaged in an overbreadth analysis and concluded that the statute was substantially overbroad. *Id*. at 349-351.

In *Johnson*, this Court followed an approach similar *Lo* and *Thompson* in striking down the flag-destruction statute, Section 42.11 of the Texas Penal Code, as facially invalid on its face because it is unconstitutionally overbroad in violation of the First Amendment. *Johnson*, 2015 WL 5853115, at *2.

The court of appeals reached the correct result under *Lo*, *Thompson* and *Johnson*. As in those cases, the court of appeals determined that the statutory scheme was content-based, and then applied "strict scrutiny" to find it facially invalid because it was not sufficiently narrowly drawn to achieve any legitimate objectives behind them. Thus, far from conflating legal concepts,[7] as the State's petition for discretionary alleges,[8] the court of appeals correctly analyzed the First

---

[7]     In *R.A.V. v. City of St. Paul*, 505 U.S. 377, 381 n.3 (1992), the Supreme Court granted certiorari to examine petitioner's claim that the St. Paul ordinance "violat[es] overbreadth ... principles of the First Amendment. The Court elected not to engage in an traditional overbreadth analysis, observing that petitioner had advanced "not just a technical 'overbreadth" claim—i.e., a claim that the ordinance violated the rights of too many third parties," but also "included the contention that the ordinance was 'overbroad' in the sense of restricting more speech than the Constitution permits, even in its application to him, because it is content based." The Court concluded "that the ordinance is facially unconstitutional in that it prohibits otherwise permitted speech solely on the basis of the subjects the speech addresses." *Id*.

[8]     The State claims that "whether the statute is content based never enters into overbreadth

Amendment implications of Section 36.03(a)(1), as it incorporates Section 1.079(a)(9)(F).

**4. Section 36.03(a)(1), as it incorporates the definition of "coercion" from Section 1.07(a)(9)(F), implicates the First Amendment.**

"Coercion" is defined as a "threat," "however communicated," to do or perform one or more of the six types of actions defined in 1.07(a)(9)(A-F). While the term "threat" is not statutorily defined, this Court has previously defined "threat" as "a communicated intent to inflict harm or loss on another or on another's property." *Olivas v. State*, 203 S.W.3d 341, 345-46 (Tex. Crim. App. 2006). It is therefore clear that the Legislature has limited "coercion" to speech, excluding conduct from the statute's purview. Thus, the statute on its face necessarily implicates the First Amendment. *Watts v. United States*, 394 U.S. 705, 706-07 & n.* (1969) (written or oral threats "to take the life or to inflict bodily harm upon the President" or others in line of succession "makes criminal a form of pure speech").

**5. The State's arguments that the statutes do not implicate the First Amendment are without merit.**

The State argues that the court of appeals erred at the outset because coercive threats are outside the protection of the First Amendment. This claim is

---

analysis, State PDR at 5, but this is inaccurate. In *United States v. Stevens*, 559 U.S. 460 (2010), relied upon by the State in its petition, the Supreme Court invalidated the animal cruelty statute because it was "substantially overbroad," 559 U.S. 482, but it did so only after concluding that the statute was "presumptively invalid" because it "explicitly regulates expression based on content." *Id*. at 468. The Court's overbreadth analysis compared the presumptively

20

without merit.

In the court of appeals, the State argued that Governor Perry's speech was unprotected because it amounted to a "retaliatory act," "verbal extortion," or a "*quid pro quo* threat[] made under a display of authority and power." St. Br.at 6-7. But the sections under challenge criminalize far more than retaliation, extortion, and *quid pro quo* threats. *See* App.Br. at 10-17.

The State reads both statutes in isolation to attempt to negate their actual effect. But when Section 36.03(a)(1) is read, as it must be, in conjunction with Section 1.07(a)(9)(F), "coercion" need not be illegal, unlawful, tortious, or even a "true threat." Read together, the statutes cannot be read narrowly.[9]

### a. The State's cases are distinguishable.

The cases cited by the State cannot save these statutes from facial invalidity. The State's main authority, *Puckett v. State*, 801 S.W.2d 188 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd), addressed both facial and as-applied challenges to the more narrowly drawn retaliation statute, Section 36.06(a), by a defendant who "repeatedly stated in no uncertain terms that he would kill [the arresting officer]

---

impermissible as opposed to the permissible applications of the statute.

[9]     Section 1.07(a)(9)(**F**) does not require the prohibited "threat" to be unlawful, and Section 36.03(a)(1) does not require the "coercion" to be unlawful. Since the term "unlawful" is defined by the Penal Code to mean "criminal or tortious or both and includes what would be criminal or tortious but for a defense not amounting to justification or privilege," Tex. Penal Code § 1.07(a)(48), it necessarily follows that Section 36.03(a)(1), when read in conjunction with Section 1.07(a)(9)(**F**), covers any and all speech that can be construed as a "threat" if it otherwise meets the requirements of Section 36.03(a)(1).

21

when he got out of jail." *Id*. at 194. The court said that "it is clear that these statements by [Puckett] could reasonably be interpreted" as a "true threat" reflecting an "intent to kill or injure," and hence not protected speech. *Id*. Similarly, *Bd. v. State*, No. 03-96-00024-CR, 1998 WL 271043 (Tex. App.—Austin May 29, 1998, pet. ref'd) (not designated for publication),[10] involved a challenge to the tampering statute, Section 36.05, in conjunction with the narrower definition of "coercion" in Section 1.07(a)(9)(**D**), which criminalizes a threat "to expose a person to hatred, contempt or ridicule." *Id*. at *4 (citation and quotation omitted). Thus, even if this unpublished opinion had any precedential value, it does not apply to the same statutory scheme involved here. Finally, *Duncantell v. State*, 230 S.W.3d 835 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd), involved the rejection of an overbreadth challenge to the "interference with public duties" statute, Section 38.15(a)(1) of the Texas Penal Code. The Court found that the defendant engaged in *conduct* which he knew or should have known would interrupt, disrupt, impede, or interfere with a peace officer performing a duty imposed by law, "such as investigating an accident or arresting a criminal suspect." 230 S.W.3d at 844. That, the court held, was "*not* expressive conduct protected by the First Amendment." *Id*. (emphasis added). Importantly, the court specifically noted that Section 38.15(d) "provides that it is a defense to prosecution under the

---

[10] *Board* has no precedential value under Tex. R. App. P. 47.7.

statute if the interruption, disruption, impediment, or interference alleged *consists of speech only*." *Id*. at 843 (emphasis added). Accordingly, the court stated "we must only examine the interference statute's limitations on *conduct* to determine if it restricts a substantial amount of constitutionally protected *conduct*." *Id*. at 844-45 (emphasis added).

None of these cases are relevant. Governor Perry was indicted under a materially different provision of the Penal Code, Section 36.03(a)(1), in conjunction with the broader definition of "coercion" in Section 1.07(a)(9)(**F**). But even if *Puckett*, *Board*, and *Duncantell* supported the State's markedly narrow view of First Amendment protections, they would not bind this Court because they would be irreconcilable with the requirement that only "true threats"—which the U.S. Supreme Court has defined as "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence"—lack First Amendment protection. *Black*, 538 U.S. at 359 (no protection for cross burning that communicates threat of bodily harm or death); *see also Watts*, 394 U.S. at 707-08 (no protection for threat to assassinate the President of the United States).

Moreover, the State never acknowledges, let alone distinguishes, cases cited by Perry and expressly relied on by the court of appeals, like *N.A.A.C.P v. Claiborne Hardware Co.*, 458 U.S. 886, 910 (1982), which explained that "speech

23

does not lose its protected character . . . simply because it may embarrass others *or coerce them into action*." (Emphasis added). The facts of *Claiborne* are particularly instructive. There, a civil-rights boycott organizer warned that boycott breakers would be "disciplined," and that "if we catch any of you going into any of them racist stores, we're gonna break your damn neck." *Id*. at 902. While such statements "might have been understood as inviting an unlawful form of discipline or, at least, as intending to create a fear of violence," *id*. at 927, they still enjoyed First Amendment protection because expression on public issues "has always rested on the highest rung of the hierarchy of First Amendment values." *Id*. at 913 (quoting *Carey v. Brown*, 447 U.S. 455, 467 (1980)); *see also Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971) ("The claim that . . . expressions were intended to exercise *a coercive impact* on respondent does not remove them from the reach of the First Amendment. Petitioners plainly intended to influence respondent's conduct by their activities; *that is not fundamentally different from the function of a newspaper*." (Emphasis added)).

Furthermore, the State relies on language in *Sanchez v. State*, 995 S.W.2d 677, 688 (Tex. Crim. App. 1999), noting that "verbal extortion 'has no more constitutional protection than that uttered by a robber while ordering his victim to hand over the money.'" St.Br. at 7. But *Sanchez*—a prosecution for official oppression by sexual harassment under Section 39.03(a)(3)—merely analogized

24

sexual harassment by a public servant to official extortion and bribery on the ground that "the receipt of someone's submission to sexual conduct" was comparable to "the use of official power to obtain a benefit to which the official was not otherwise entitled" in the form of "money or tangible property." 995 S.W.2d at 688.[11] Count II of the indictment does not allege extortion, bribery, or receipt of a personal benefit. More importantly, any such allegations would be irrelevant to Governor Perry's facial challenge because the plain language of Section 36.03(a)(1) and Section 1.07(a)(9)(**F**) extends far beyond extortionate threats or bribery.

> **b.** **The court of appeals was correct that Governor Perry did not lose his First Amendment rights by holding public office.**

The State also advances the novel claim that Governor Perry cannot make a facial overbreadth challenge to Section 36.03(a)(1) and Section 1.07(a)(9)(F) because, in exercising his official duties as Governor of Texas, he enjoyed no First Amendment rights. *See* St.Br. at 8-10. The State cites two recognized instances of prohibition: (1) certain government-employee speech, which is subject to no greater First Amendment protection than the speech of private employees; and

---

[11]    In *Sanchez*, this Court commented that if the official oppression statute were to cover "conduct welcomed by the recipient in a corrupt bargain," then such conduct could also be prosecuted under the prostitution or bribery statutes. 995 S.W.2d at 684 & n.5. Similarly, if there were any facts supporting the State's use of its colorful metaphors such "retaliatory act," "verbal extortion," or "*quid pro quo* threat" then the State could have sought an indictment under other, arguably applicable statutes.

25

(2) the concept of government speech itself. *Id.* The court of appeals properly rejected both of these. Slip Op. at 63-71.

But neither of these principles has *anything* to do with criminalizing speech, much less criminalizing an elected official's political speech through the mechanism of an overboard statute. First, from a strictly legal standpoint, facial overbreadth analysis deals not with the statute as applied to the particular defendant, but whether "it prohibits a substantial amount of protected speech." *Williams*, 553 U.S. at 292. Governor Perry's own First Amendment rights are therefore irrelevant to the resolution of his facial overbreadth challenge.

With regard to government-employee speech, the State points out that the First Amendment generally does not protect statements made by public servants in the course of their employment. St.Br. at 9 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006)). But this employee-speech "exception" is not really an exception at all—it just makes unelected public servants, who are employees, subject to civil employment-law standards comparable to employees in the private sector. Just like a private employer, governmental entities "need a sufficient degree of control over their employees' words and actions" to ensure the "provision of public services." *Garcetti*, 547 U.S. at 418; *see also Connick v. Myers*, 461 U.S. 138, 143 (1983) ("[G]overnment offices could not function if every employment decision became a constitutional matter.").

The rights of those directly selected by the people to govern, such as the Governor of Texas, are not so limited. Indeed, political speech by elected officials, whose "relationship with [their] employer [i.e., the people] differs from that of an ordinary state employee," "is at the core of the First Amendment." *Jenevein v. Willing*, 493 F.3d 551, 557 (5th Cir. 2007) (Texas Judicial Conduct Commission violated First Amendment rights by censuring elected judge for public criticism of attorney practicing in his court). "The role that elected officials play in our society makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance." *Wood v. Georgia*, 370 U.S. 375, 395 (1962) (reversing contempt conviction of elected sheriff based on criticism of court's grand jury investigation). The Supreme Court has expressly rejected the idea that the First Amendment protects only the "citizen-critic" and not elected officials as well. *Bond v. Floyd*, 385 U.S. 116, 136 (1966) (state legislature violated elected representative's First Amendment rights by refusing to seat him based on his controversial remarks about the Vietnam War).

The State also errs by characterizing Governor Perry's alleged threat as "government speech" exempt from the First Amendment—as if anything uttered by a government employee, or the Governor himself, can be criminalized without any First Amendment analysis at all. St.Br. at 8-9. The State's authorities for this bizarre and frankly dangerous notion have nothing whatsoever to do with

27

criminalizing speech. They merely acknowledge that the First Amendment generally allows the government to communicate its own particular viewpoints without subsidizing or promoting other viewpoints to the same extent as its own. *See Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009) (city could select which monuments to place in public park); *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 561 (2005) (federal government could choose to spend money promoting beef consumption). The Supreme Court recently reaffirmed this doctrine in *Walker v. Tex. Division, Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239 (2015) (Texas could constitutionally exclude from its specialty license plates SVC's proposed design featuring the Confederate battle flag).[12] But none of these cases authorize the government to criminalize speech by government employees or anyone else, must less elected leaders.

Even if First Amendment protections were somehow withdrawn from "government speech" as a general proposition, Governor Perry's alleged threat is not the sort of officially-sanctioned "government speech" involved in the cited cases. His statements—which the State in its "bill of particulars" now concedes were never made directly to Lehmberg, *see* March 2, 2015 SuppCR at 6, and were

---

[12] *Walker* holds that "specialty license plates issued pursuant to Texas' statutory scheme convey government speech." *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2246 (2015). The Court stated that because "the government can speak for itself," and "[w]hen the government speaks, it is not barred by the Free Speech clause from determining the content of what it says," Texas could constitutionally exclude from its license plate SVC's proposed design and logo. *Id*. at 2245-46.

28

merely "implied or disguised," *see* St.Br. at xvi—were not presented as the official viewpoint of the State of Texas, but rather his own viewpoint as the Governor of Texas. *Cf. Pleasant Grove*, 555 U.S. at 473-74 (city spoke through a Ten Commandments monument when it "took ownership of that monument and put it on permanent display in a park that it owns and manages and that is linked to the City's identity"); *Johanns*, 544 U.S. at 561 (beef promotion campaign was government speech because the activities were "prescribed by law in their general outline" and "developed under official government supervision"). The State wants to have it both ways: characterizing Governor Perry's alleged speech as the official position of the State while at the same time prosecuting him as an *individual* for expressing it.

From its faulty premise that speech by government officials enjoys no First Amendment rights, the State also concludes that the Legislature can always limit the speech of its own members without running afoul of the First Amendment, even if that requires restricting some "incidental" *private* speech in the process. St.Br. at 10-11. The State argues that the specific statutory language at issue merely restricts private speech in order to express the "viewpoint" that "official speech should not be coerced speech." *Id*.

The State's apparent argument is that Section 36.03(a)(1) and Section 1.07(a)(9)(F) express a government "viewpoint" and can therefore freely

criminalize any private speech made with the intent to influence the speech (or conduct) of a public official, regardless of the words used, without further First Amendment concerns. Section 36.03(a)(1), it must be recalled, is applicable to any citizen, whether that citizen is a public official, a public official acting in his individual capacity, or a private citizen.[13] Thus, under the State's argument, a newspaper editorial expressing the personal view of the editor, which was intended to pressure and have a "*coercive impact*" on a public servant, could be criminalized, even though the First Amendment clearly protects such speech. *Org. for a Better Austin*, 402 U.S. at 419 (emphasis added).

The State's argument also mistakenly assumes that the coercion statute "is the Texas Legislature regulating its own speech and actions." St.Br. at 11. But the State fails to account for the statutory exception of Section 36.03(c), which—far from regulating the Legislature's "own speech"—excludes from the purview of Section 36.03(a)(1) "official actions" taken by "a member of the governing body of a governmental entity" that are intended to influence another public servant. This exception reflects a legislative determination that "coercion" by one public servant against another public servant is not always or even necessarily a crime under

---

[13] Count II specifically alleges that Governor Perry was "acting in an official capacity as a public servant." But the statutory language allows prosecution of a private citizen as well as a public servant, regardless of whether the public servant is speaking in his public or individual capacity. *See e.g.*, *Tobias v. State*, 884 S.W.2d 571, 577 (Tex. App.—Fort Worth 1994, pet. ref'd); *Phillips v. State*, 401 S.W.3d 282, 287-89 (Tex. App.—San Antonio 2013, pet. ref'd).

Section 36.03(a)(1). Indeed, when the defendant is himself or herself a certain type of public servant (i.e., "a member of the governing body of a governmental entity") and the defendant takes "official action" that "influences or attempts to influence a public servant" (i.e., the alleged victim of the "coercion"), there is no crime under Section 36.03(a)(1). The statutory exception negates the State's argument here that the Legislature was attempting to limit its own speech. But even if the State's explanation were not so obviously wrong on so many levels, the State never explains how the Legislature, under the guise of "regulating its own speech," could abrogate *individual* members' constitutional rights, much less those of private citizens throughout Texas. Both have the right to say anything to a public servant as long as it is does not constitute a "true threat."

Simply stated, none of the State's arguments attempting to deflect the impact of the First Amendment on Section 36.03(a)(1), as it incorporates the definition of "coercion" from Section 1.07(a)(9)(F), has any merit.

**6.    Section 36.03(a)(1), as it incorporates the definition of "coercion" from Section 1.07(a)(9)(F), is a content-based restriction on speech.**

The coercion statute does not target all threats against a public servant, but only those with a certain content—i.e., "threat[s] . . . to take or withhold official action" that "attempt to influence or influence" public servants. Tex. Penal Code §§ 1.07(a)(9)(F), 36.03(a)(1). As such, it distinguishes "favored speech from

31

disfavored speech on the basis of the ideas or views expressed" and is clearly content-based. *Ex parte Thompson*, 442 S.W.3d at 345; *Ex parte Lo*, 424 S.W.3d at 15-14  In the court of appeals, the State itself conceded that Section 36.03(a)(1) and Section 1.07(a)(9)(F) are content-based restrictions on speech.  St. Br. 14-15. Thus, "strict scrutiny" is the proper standard of review, "because, 'as a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Ex parte Lo,* 424 S.W.2d at 16 (quoting *Ashcroft v. A.C.L.U.*, 535 U.S. 564, 573 (2002)).  Under that standard, the statute is presumed invalid. *Ex parte Thompson*, 442 S.W.3d at 344-345; *Ex parte Lo*, 424 S.W.3d at 15.

In the court of appeals, the State disputed that strict scrutiny applied for  the same reasons it proffered that Governor Perry lacked any free speech rights.  It claimed that the presumption of constitutionality applies to the statutes because "regulating coercive threats by public officials is distinct from regulating purely political speech by private citizens." St.Br. at 14-15.  And it suggested that strict scrutiny is inapplicable because "only content-based regulations on *private citizen's speech* would be held presumptively invalid and subject to strict

---

14      In *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2230 (2015), the Supreme Court specifically observed that "a law banning the use of sound trucks for political speech—and only political speech—would be a content-based regulation even if it imposed no limits on the political viewpoints that could be expressed." *Reed* further compels the conclusion that the limitation the statutory scheme, proscribing communications by one public official to another that threaten to take or withhold official action, is a content-based restriction.

scrutiny." St.Br. at 19-20 (emphasis in original). But these attempts to divorce the protections of the First Amendment from the government are, as has been discussed above, incorrect.

      **7.     Section 36.03(a)(1), as it incorporates the definition of "coercion" from Section 1.07(a)(9)(F), fails to satisfy "strict scrutiny."**

Under strict scrutiny, a law regulating speech or expression may be upheld only if it is narrowly drawn to serve a compelling government interest. *Ex parte Thompson*, 442 S.W.3d at 344; *Ex parte Lo*, 424 S.W.3d at 15-16, 19. A statute is "narrowly drawn" if it uses the least restrictive means of achieving the government interest." *Ex parte Thompson*, 442 S.W.3d at 344; *Playboy Entm't Grp., Inc.*, 529 U.S. at 813; *Ex parte Lo*, 424 S.W.3d at 15-16, 19. Such "content-based regulations are presumptively invalid, and '[i]t is rare that a regulation restricting speech because of its content will ever be permissible.'" *Ex parte Thompson*, 442 S.W.3d at 348 (citing *Sorrell v. IMS Health* 131 S. Ct. 2653, 2667 (2011) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. at 382) and *Entm't Merchants Ass'n*, 131 S. Ct. 2729 at 2738 (citing *Playboy Entm't Grp.,* 529 U.S. at 818)).

The State cannot salvage Sections 36.03(a)(1) and 1.07(a)(9)(F) by arguing that they are the least restrictive means of achieving a compelling state interest. Any compelling state interests are already addressed by the other types of threats that constitute "coercion" under Section 1.07(a)(9). The State surely has a

compelling interest in preventing threats of unlawful or criminal acts against public servants, but Section 1.07(a)(9)**(A)** already covers threats "to commit an offense." And while the State has a compelling interest in preventing threats of violence against public servants, *Tobias v. State*, 884 S.W.2d 571, 580-81 (Tex. App.—Fort Worth 1994, pet. ref'd), this interest is already addressed by Section 1.07(a)(9)**(B)**'s coverage of threats "to inflict bodily injury in the future on the person threatened or another." And to the extent extortionate threats against public servants are not already covered by these prior two provisions, Sections 1.07(a)(9)**(C)** through **(E)** address threats of defamation and invasion of privacy. In short, there is no compelling state interest left to serve by Section 1.07(a)(9)**(F)**'s catch-all coverage of threats "to take or withhold action as a public servant." The only discrete function of this provision, when combined with Section 36.03(a)(1), is to prohibit constitutionally-protected speech.

An analogous situation was presented in *Ex parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013), in which this Court struck down a subsection of the Penal Code which prohibited sex-related online communications with minors. That statute (like the one here) was a "content-based regulation" and "presumptively invalid." *Id.* at 15. According to the Court, the statute was not narrowly tailored because "*everything* that [it] prohibits and punishes is speech and is either already prohibited by other statutes (such as obscenity, distributing harmful material to

34

minors, solicitation of a minor, or child pornography) or is constitutionally protected," such as sexually explicit works of literature and popular television shows and movies. *Id.* at 20 (emphasis in original). The same logic applies to Sections 36.03(a)(1) and 1.07(a)(9)(F). *See also Thompson*, 442 S.W.3d at 349-50 (striking down as overbroad a criminal photography statute because, while the statute had some "legitimate applications," it "appl[ied] to any non-consensual photograph, occurring anywhere, as long as the actor ha[d] an intent to arouse or gratify sexual desire," including photographs of celebrities and public sunbathers).

C. **Even if the court of appeals erred in its reasoning, its judgment was correct for other reasons.**

1. **Section 36.03(a)(1), as it incorporates the definition of "coercion" from Section 1.07(a)(9)(F), is overbroad.**

The court of appeals' judgment was also correct because the statutes forming the basis for Count II, when read together, are overbroad. *See Ex parte Thompson*, 442 S.W.3d at 349-351.

The court of appeals discussed the overbreadth of the statutory scheme throughout its opinion, but did not formally declare the provisions violative of the First Amendment overbreadth doctrine. It held only that "section 36.03(a)(1), as it incorporates paragraph (F) of the Penal Code's 'coercion' definition, is facially invalid under the First Amendment and is thus unenforceable." Slip Op. at 97.

As noted above, a state can outlaw threats of violence against a public

35

servant without raising any First Amendment concerns. "True threats"—which the U.S. Supreme Court has defined as "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence"—have no First Amendment protection. *Black*, 538 U.S. at 359 (no protection for cross burning that communicates threat of bodily harm or death); *see also Watts*, 394 U.S. at 707-08 (no protection for threat to assassinate the President of the United States). Threats to commit an unlawful act are also generally not protected. *See Wurtz v. Risley*, 719 F.2d 1438, 1442 (9th Cir. 1983) (no protection for threat to commit rape); *U.S. ex rel. Holder v. Circuit Court of 17th Judicial Circuit*, 624 F. Supp. 68, 71 (N.D. Ill. 1985) (no protection for threat to damage property). And courts have also held that the First Amendment does not protect extortion (i.e., threats of harm or defamation made to obtain a wrongful profit). *See United States v. Coss*, 677 F.3d 278, 289-90 (6th Cir. 2012) (no protection for threat to damage reputation made with intent to wrongfully obtain property); *cf. Sanchez v. State*, 995 S.W.2d 677, 687-88 (Tex. Crim. App. 1999) (no protection for sexual harassment made with intent to wrongfully obtain sexual favors); *see also State v. Strong*, 272 P.3d 281, 287 (Wash. App. 2012) (noting that extortion involves "compelling of the victim to give up property" and is thus "an extension of theft").

"Speech does not lose its protected character, however, simply because it

may embarrass others or coerce them into action." *Claiborne Hardware Co.*, 458 U.S. at 886 at 910. Most threats do not fall into the categories of unprotected speech listed above and instead enjoy "broad protection" under the First Amendment. *All. to End Repression v. City of Chicago*, 742 F.2d 1007, 1014 (7th Cir. 1984). Non-extortionate threats to commit *lawful* action are protected by the First Amendment, even if they influence another public servant. *See State v. Hanson*, 793 S.W.2d 270, 272 (Tex. App.—Waco 1990, no pet.) ("Coercion of a lawful act by a threat of lawful action is protected free expression."). And courts have recognized that "a threat to cause economic loss is not inherently wrongful." *United States v. Jackson*, 180 F.3d 55, 70 (2d Cir. 1999) (listing, as examples, a consumer's threat to sue for breach of warranty or file a complaint with a consumer protection agency). Indeed, threats are "common in everyday business and personal interactions." *State v. Weinstein*, 898 P.2d 513, 515 (Ariz. Ct. App. 1995) (listing, as examples, car owner's threat to tell friends not to patronize a dealer unless repairs are made, a store owner's threat to report a customer to a credit reporting agency unless bills are paid, and a mother's threat to report her ex-husband to the court if he fails to pay back child support). Threats are also common in American political discourse, often being inseparable from ideas or advocacy. *See United States v. Velasquez*, 772 F.2d 1348, 1357 (7th Cir. 1985) (giving, as an example, a threat to picket an organization to induce social or

37

political action). Even threats to commit minor criminal offenses (such as threats of civil disobedience) can be protected speech. *See Wurtz*, 719 F.2d at 1442 (listing, as examples, threats of sit-ins, marches in the street, and mass picketing); *Holder*, 624 F. Supp. at 70 (listing additional examples).

Given the broad protection accorded to threats under the First Amendment, courts have not hesitated to strike down broadly-written coercion and extortion laws on grounds of overbreadth. *See, e.g.*, *Wurtz*, 719 F.2d at 1441-42 (striking down Montana intimidation statute prohibiting threats "to commit any criminal offense," no matter how minor or the purpose of the threat); *Holder*, 624 F. Supp. at 71 (striking down Illinois intimidation statute prohibiting threats to "commit any criminal offense"); *Weinstein*, 898 P.2d at 515 (striking down extortion statute that prohibited obtaining property by threats to expose disreputable information, which impinged on legitimate negotiation tactics); *Whimbush v. People*, 869 P.2d 1245, 1247-48 (Colo. 1994) (striking down extortion statute prohibiting making any threat to harm with intent to induce action, which improperly "covers threats of collective action in support of group demands"); *State v. Robertson*, 649 P.2d 569, 589-90 (Or. 1982) (striking down coercion statute prohibiting a wide range of threats merely intended to induce some action by another); *City of Seattle v. Ivan*, 856 P.2d 1116, 1120 (Wash. App. 1993) (striking down city's coercion ordinance which prohibited a wide range of threats merely intended to induce some action by

another). Other courts have given coercion and extortion statutes narrow constructions to avoid constitutional issues. *See, e.g.*, *Jackson*, 180 F.3d at 70 (construing extortion statute to only include "wrongful" threats to obtain property from another, and recognizing that some threats to obtain property are legitimate negotiation tactics); *People v. Iboa*, 207 Cal. App. 4th 111, 120-21 (2012) (statute proscribing use of "threats" to interfere with duties of executive officer construed as limited to "threats of unlawful violence"); *State v. Pauling*, 69 P.3d 331, 387-89 (Wash. 2003) (narrowing otherwise overbroad extortion statute to only include "wrongful" threats made with intent to obtain property from another).

As written, Sections 36.03(a)(1) and 1.07(a)(9)(**F**) criminalize a breathtaking amount of constitutionally protected speech. As explained above, they purport to criminalize (with only one exception) *any* threat by a public servant to take *any* official action as a means of merely *influencing* the conduct of *any other* public servant.[15] Importantly, the statute is not limited to threats of "unlawful" conduct, *see* Tex. Penal Code § 1.07(a)(48) (defining "unlawful" as "criminal or tortious or both"), in contrast to other similar statutes. *See, e.g., id.* § 36.06(a) (illegal to "intentionally or knowingly . . . threaten[] to harm another by an *unlawful* act" in retaliation for public service (emphasis added)).

---

[15] The statute also applies to all citizens, even public servants acting in their individual capacities, who attempt "to cause a public servant to take or withhold action" under the last clause of Section 1.07(a)(9)(F).

The implications are astounding, as they would render criminal many common scenarios in state government. For instance, a manager could not threaten to fire or demote a government employee unless the employee increased his productivity. A government employee could not threaten to resign unless her pay or benefits were increased, or to file a complaint unless workplace harassment were stopped. A judge could not threaten to sanction an attorney for the State, to declare a mistrial if jurors did not avoid misconduct, or to deny warrants that failed to contain certain information. An inspector general could not threaten to investigate an agency's financial dealings. A prosecutor could not threaten to bring criminal charges against another public servant. A university administrator could not threaten to withdraw funding from a professor's research program. A public defender could not threaten to file a motion for suppression of evidence to secure a better plea bargain for his client. A prosecutor could not communicate to a judge in chambers his intent to file a potentially embarrassing motion to recuse unless the judge voluntarily recused herself. Were it not for the fact that members of a "governing body" are excepted from the statute, even members of the House and Senate would presumably be breaking the law when they negotiated among themselves to resolve differences in conference committee.[16] The list is virtually

---

[16] Indeed, even a threat directed against a third party can trigger criminal liability if intended to influence a public servant. *See Phillips v. State*, 401 S.W.3d 282, 289 (Tex. App.— San Antonio 2013, pet. ref'd) (upholding conviction of 911 caller who threatened to kill

endless.[17]  Statements so intrinsic to government, particularly when they relate to matters of public policy, lie at the core of First Amendment protection. *See Meyer*, 486 U.S. at 422 (First Amendment protection is "at its zenith" for core political speech); *Garrison v. La.*, 379 U.S. 64, 74-75 (1964) ("[S]peech concerning public affairs is more than self-expression; it is the essence of self-government.").

Inescapably, the plain language of Sections 36.03(a)(1) and 1.07(a)(9)(**F**) prohibit a striking number of ordinary activities that involve constitutionally protected speech, much of it political in nature.  In fact, as written, the statutory language would make the ordinary functioning of government impossible.  This is a textbook case of overbreadth.

To support its ruling, the district court below cited several cases where Texas courts rejected facial First Amendment challenges to statutory language that was narrowly drawn and not constitutionally overbroad.  CR475-478.  But these cases deal with different statutory sections and distinguishable facts.  The Second Court of Appeals rejected a First Amendment challenge to Sections 36.03(a)(1) and 1.07(a)(9)(**A**), under which a private citizen was charged with threatening to

---

particular police officer and thus influenced which officer a 911 dispatcher sent to the scene). For example, a government employee who threatened a trespasser and thereby caused a nearby peace officer to intervene would be a criminal under these provisions.

[17]    This list of potential implications was so compelling that the court of appeals incorporated many of them into its opinion.  Slip Op. at 58-60.  And while the State's petition attempts to distinguish two of them, its petition nevertheless admits that "[s]ome of the court of appeals' hypotheticals may be valid."  State PDR at 12.

"commit an offense" (murder and assault) against three court-of-appeals justices. *Tobias*, 884 S.W.2d at 580-82. The Fourteenth Court of Appeals upheld a retaliation statute which prohibited "threat[s] to harm another by an *unlawful act*." *Puckett v. State*, 801 S.W.2d at 192 (quoting former Tex. Penal Code § 36.06(a)). This Court upheld a harassment statute that prohibited "threat[s], by telephone or in writing, to take *unlawful action*." *Collection Consultants, Inc. v. State*, 556 S.W.2d 787, 792 (Tex. Crim. App. 1977) (emphasis added) (quoting former Tex. Penal Code § 42.07(a)(2)). The Fourth Court of Appeals upheld a theft statute that prohibited extortion i.e., "unlawfully appropriat[ing]" property by means of "coercion" as defined in Section 1.07(a)(9)**(D)** and **(E)** (i.e., threats of defamation). *Roberts v. State*, 278 S.W.3d 778, 790-93 (Tex. App.—San Antonio 2008, pet. ref'd). Finally, this Court upheld a sexual harassment statute that prohibited public servants from conditioning a right or privilege on submission to sexual advances— conduct that the court analogized to extortion. *Sanchez*, 995 S.W.2d at 687-88.

In every one of these cases, the statutes at issue were narrowly written to focus on unprotected speech. None of these cases stands for the broad proposition that all threats—even those which are not "true threats"—are unprotected speech, much less that the State has a compelling interest in preventing their communication. And none of these cases dealt with, much less upheld, the much broader statutory language at issue here, which is not limited to threats to

42

"unlawfully" take or withhold official action. *See* Tex. Penal Code § 1.07(a)(48) (defining "unlawful" to mean "criminal or tortious or both and includes what would be criminal or tortious but for a defense not amounting to justification or privilege").[18]

Citing *Broadrick v. Oklahoma*, 413 U.S. 601 (1973), the State claims the statutory scheme's overbreadth has not been demonstrated to be "realistic or substantial," because there is "no evidence that in the years since the coercion statute was enacted, any public servant has been chilled." State PDR at 12. Overbreadth is an "expansive remedy" that has been provided by the Supreme Court "out of concern that the threat of enforcement of an overbroad law can deter or 'chill' constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (citing *Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 634 (1980).

But the overbreadth doctrine's concern with "chilling" protected speech "attenuates as the otherwise unprotected behavior that forbids the State to sanction moves from 'pure speech' toward conduct." *Id.* at 124 (citing *Broadrick*, 413 U.S. at 615). "To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not

---

[18]    As the district court recognized, Governor Perry intends to assert a "public duty" justification defense under Texas Penal Code Section 9.21 if this case ever proceeds to trial. CR472 n.7.

43

only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615. This analysis considers "a statute's application to real-world conduct, not fanciful hypotheticals, and there must be a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court. *Stevens*, 559 U.S. at 485.

Here, because Section 36.02(a)(1), in conjunction with Section 1.07(a)(9)(F), criminalizes *only* speech that does not constitute a "true threat," this particular statutory scheme has no plainly legitimate sweep. The determination by the court of appeals that the "extent and nature" of the statutory scheme's alarmingly broad proscription on "First Amendment-protected territory" "cannot merely be left to remedy through future case-by-case adjudication," Slip Op. at 39, is a recognition that the statutory scheme criminalizes a substantial amount of protected speech in absolute terms. *A fortiori*, the statutory overbreadth is "realistic or substantial," as it includes "core political speech" for which the First Amendment's protections are at their "zenith." *Id.* at 62.

Indeed, this is entirely consistent with *United States v. Stevens*, where the Supreme Court invalidated the animal cruelty statute because it was "substantially overbroad." 559 U.S. 482. But it did so only after concluding that the statute was "presumptively invalid" because it "explicitly regulates expression based on

content." *Id*. at 468. The Court's overbreadth analysis examined the presumptively impermissible applications of the statute and compared them to the permissible ones, without examining whether there was any "evidence" of a "chilling" effect on First Amendment rights.

Finally, the court of appeals recognized the relative absence of criminal prosecutions under Section 36.02(a)(1) and Section 1.07(a)(9)(F)—at least until this misguided prosecution—is most probably because of *Hanson's* declaration, twenty-five years ago, that this exact statutory scheme is unconstitutional. Slip Op. at 90. The State's argument would seem to stand First Amendment jurisprudence on its head, upholding the statute on the basis of a lack of "evidence" of an actual chilling effect when in fact, the statute is aimed only at criminalizing speech otherwise protected by the First Amendment.

The only case to address the constitutionality of the statutory language at issue here affirmed the dismissal of an indictment which was based on a threat of lawful conduct. *See Hanson*, 793 S.W.2d at 273. *Hanson* held that a prior version of Section 36.03(a)(1) was unconstitutionally vague as applied to a threat of lawful action because "*[c]oercion of a lawful act by a threat of lawful action is protected free expression,*" and a reasonable person could only guess whether "the term 'threat' encompass[ed] a threat of lawful action or only prohibit[ed] a threat of unlawful action." *Id.* at 272 (emphasis added). While *Hanson* expressly declined

45

to reach the question of the statute's overbreadth, *id.* at 273, its First Amendment holding supports that challenge as well.

Text, precedent, and common sense all point to the same conclusion: Sections 36.03(a)(1) and 1.07(a)(9)(F), in conjunction, would essentially criminalize the ordinary give and take of politics as well as the administration of state government, all in violation of the First Amendment and without serving any compelling state interest. For these reasons, the statutory language is facially unconstitutional and void, as well as overbroad. The court of appeals reached the proper result.

## 2. The statutory scheme is facially void for vagueness

The coercion statute is fatally unclear about the conduct it purports to prohibit. CR18, 35-41, 413-16. The district court reasoned, erroneously, that because *some* conduct (such as threats of violence) are clearly covered by the language of the statute, the language must survive a facial vagueness challenge. CR479-82. But laws regulating speech are measured by stricter standards of certainty. As with his First Amendment challenges, Governor Perry is challenging the facial vagueness of Sections 36.03(a)(1) and 1.07(a)(9)(F) when read together, not either standing alone.

Due process requires that criminal laws be sufficiently clear in two distinct respects. First, a person of ordinary intelligence must be given a reasonable

46

opportunity to know what is prohibited. *Long v. State*, 931 S.W.2d 285, 287 (Tex. Crim. App. 1991) (citing *Grayned v. Rockford*, 408 U.S. 104, 108 (1972)). Second, the law must establish determinate, explicit guidelines to prevent arbitrary enforcement by the government. *Long*, 931 S.W.2d at 287 (citing *Grayned*, 408 U.S. at 108-09). Thus, a statute is void for vagueness if it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess as to its meaning and differ as to its application." *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. 1979); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1971).

In addition, when First Amendment freedoms are implicated, as here, the law must be sufficiently definite to avoid chilling protected expression. *Long*, 931 S.W.2d at 287-88 (citing *Grayned*, 408 U.S. at 109). "When a statute is capable of reaching First Amendment freedoms, the doctrine of vagueness demands a greater degree of specificity than in other contexts." *Long*, 931 S.W.2d at 287-88 (quoting *Kramer v. Price*, 712 F.2d 174, 177 (5th Cir. 1983) (quotation marks omitted)). That heightened specificity is necessary to preserve the right of free expression because "[u]ncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Grayned*, 408 U.S. at 109 (internal ellipsis and quotation marks omitted). When a vagueness challenge involves First Amendment considerations, the usual strictures

47

of facial challenges are relaxed; a criminal statute may be held facially invalid for vagueness even though it may not be unconstitutional in every application or even as applied to the defendant's conduct. *Long*, 931 S.W.2d at 288 (citing *Gooding v. Wilson*, 405 U.S. 518 (1972)).

Sections 36.03(a)(1) and 1.07(a)(9)(F) raise a fundamental and vexing question for any public servant[19] who wishes to comply with the law: does the statutory language actually prohibit *any* threat to "take or withhold action as a public servant" that merely "influences" another public servant? As *Hanson* recognized, substantial uncertainty exists about whether this language was truly intended to embrace threats of *lawful* action, which are protected by the First Amendment. *See Hanson*, 793 S.W.2d at 272-73 (holding this statutory language was unconstitutionally vague as applied to threats of lawful action).[20] Moreover, a similar uncertainty exists about whether the statute was intended to cover threats of *unlawful* action, as such threats are already addressed by subparts (A) through (E) of the "coercion" definition in Section 1.07(a)(9).

Further compounding the vagueness of these sections is the fact that the offense requires no culpable mental state. Technically, an offense could be

---

[19] Since the statute also applies to non-public servants, the lack of notice applies to all citizens regardless of whether they are public servants (and regardless of the capacity in which they speak).

[20] This uncertainty is heightened now because public servants might reasonably rely on *Hanson*'s holding that the First Amendment protects threats of lawful action.

committed under these provisions whenever a public servant makes a threat "to take or withhold [official] action," Tex. Penal Code § 1.07(a)(9)(F), as long as the threat merely *has the effect of* "influenc[ing]" another public servant. *Id.* § 36.03(a)(1). Indeed, the statutory language does not require that an offender even *know* about the threat's influence on the other public servant. Even a threat of official action inadvertently heard and acted upon by another public servant could be a criminal offense. The absence of a culpable mental state means that citizens cannot determine whether their conduct is prohibited—a plain violation of due process. *See Colautti v. Franklin*, 439 U.S. 379, 395 (1979) (statute that criminalized killing a viable fetus held unconstitutionally vague where no scienter was required with respect to fetus's viability, thus creating "a trap for those who act in good faith"); *Long*, 931 S.W.2d 285 at 290 (striking down harassment statute as unconstitutionally vague in part because statutory requirement of a police report "does little or nothing to inform an ordinary person that his conduct is forbidden because the subsection contains no culpable mental state"; "[t]he wording of the statute does not require the defendant to *know* that the victim has made such a report" (emphasis in original)).

The vagueness of the statutory language is underscored by the fact that it confusingly appears to characterize as "coercion" a threat that does not even rise to the level of duress. For example, a public official who resigns under duress is

49

allowed to rescind the resignation and recover the office. *Crouch v. Civil Serv. Comm'n of Tex. City*, 459 S.W.2d 491, 494 (Tex. Civ. App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.). Yet had Lehmberg resigned because of Governor Perry's alleged veto threat, she could not have shown duress. "[A] threat *to do what one has a legal right to do*, as bringing suit in court to enforce a claimed civil right, cannot constitute duress." *Willborn v. Deans*, 240 S.W.2d 791, 793-95 (Tex. Civ. App.—Austin 1951, writ ref'd n.r.e.) (emphasis added) (holding that sheriff could not recover his office on grounds of duress after being pressured out of office by district attorney's threat to bring removal proceedings). Similarly, a threat that "delineat[es] the options available" and forces a public official to make "a reasoned choice between two validly imposed alternatives" is not duress as a matter of law. *Van Arsdel v. Tex. A&M Univ.*, 628 F.2d 344, 346 (5th Cir. 1980) (holding that university employee could not recover his position on grounds of duress after resigning due to university's threat to bring dismissal proceedings against him based on accusations of sexual harassment).

The district court rejected Governor Perry's facial vagueness challenge to Sections 36.03(a)(1) and 1.07(a)(9)(F) without adequately addressing the substance of that challenge. The trial court first noted that the word "threat" has established dictionary definitions. CR480 (quoting *Olivas v. State*, 203 S.W.3d 341, 345-46 (Tex. Crim. App. 2006)). Most words do. But these definitions fail to resolve the

fundamental source of vagueness in the statutory language—i.e., whether the "threat" described in Section 1.07(a)(9)(F) refers to threats of *lawful* action, *unlawful* action, or both. The trial court also cited two cases which held that threat-related language was not unconstitutionally vague. CR481. But neither of those cases addressed the language at issue here. *Tobias* upheld Section 36.03(a)(1) to the extent it involved coercion under Section 1.07(a)(9)**(A)** (i.e., threats to commit an offense). *See* 884 S.W.2d at 580-82. *Roberts* upheld a statute prohibiting theft by means of coercion under Section 1.07(a)(9)**(D)** and **(E)** (i.e., threats of defamation). *Roberts*, 278 S.W.3d at 790-93. In short, no case has upheld the statutory language at issue here—Section 36.03(a)(1) to the extent it involves coercion under Section 1.07(a)(9)**(F)** (i.e., threats to take or withhold official action). And this language is materially broader—and vaguer—than any of the language in the other subsections of Section 1.07(a)(9). It does not contain any limitation to threats of "unlawful" conduct. *See* Tex. Penal Code § 1.07(a)(48) (defining "unlawful" to mean "criminal or tortious or both").

As discussed above, the only case to address this language held that it was unconstitutionally vague as applied to threats of lawful conduct. *See Hanson*, 793 S.W.2d at 273. *Hanson* expressly declined to reach the question of facial vagueness. *Id.* However, because the vagueness identified by *Hanson* is a pervasive feature of the statutory language and trenches on First Amendment

51

freedoms to an intolerable degree, Sections 36.03(a)(1) and 1.07(a)(9)(F) are also facially vague.

The Legislature has enacted other statutes addressing threats against public servants that do not suffer from these vagueness defects, if only because they require the threats to be "unlawful." *See, e.g.*, Tex. Penal Code § 36.06(a) (offense to "intentionally or knowingly . . . threaten to harm another by an *unlawful* act" in retaliation for public service or to interfere with public service (emphasis added)). But the Legislature failed to do so when it last amended and melded Sections 36.03(a)(1) and 1.07(a)(9)(F) in 1994. For the reasons given above, these provisions are unconstitutionally vague on their face, and Count II of Governor Perry's indictment is void and must be dismissed.

### Prayer for Relief

WHEREFORE, PREMISES CONSIDERED, Governor Perry respectfully prays that this Court affirm the court of appeals' judgment holding that Section 36.03(a)(1), as it incorporates the definition of "coercion" contained in Section 1.07(a)(9)(F), is facially invalid under the First Amendment, either as an impermissible content-based restriction or as overbroad. This Court should affirm the court of appeals' judgment or, alternatively, hold that discretionary review was improvidently granted because of the court of appeals' failure to reach Governor Perry's facial vagueness arguments. If this Court reverses the court of appeals

holding as to Count II, Governor Perry prays that it engage in a *de novo* review of Governor Perry's facial vagueness arguments since they augment his First Amendment facial challenges and thereafter order Count II dismissed. If this Court were both to reverse the court of appeals holding as to Count II and decline to review the facial vagueness challenge, then this Court should remand the case to the court of appeals for its consideration of the facial vagueness challenges.

Respectfully submitted,

THE BUZBEE LAW FIRM

BAKER BOTTS L.L.P.

*/s/ Anthony G. Buzbee*
Anthony G. Buzbee
State Bar No. 24001820
JPMorgan Chase Tower
600 Travis Street, Suite 7300
Houston, Texas 77002
Tbuzbee@txattorneys.com
Telephone: 713-223-5393
Facsimile: 713-223-5909

*/s/ Thomas R. Phillips*
Thomas R. Phillips
State Bar No. 00000102
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701-4078
tom.phillips@bakerbotts.com
Telephone: 512-322-2565
Facsimile: 512-322-8363

BOTSFORD & ROARK
*/s/ David L. Botsford*
David L. Botsford
State Bar No. 02687950
1307 West Ave.
Austin, Texas 78701
dbotsford@aol.com
Telephone: 512-479-8030
Facsimile: 512-479-8040

## Certificate of Compliance

I hereby certify that this document contains 11,072 words in the portions of the document that are subject to the word limits of Texas Rule of Appellate Procedure 9.4(i), as measured by the undersigned's word-processing software.

*/s/ David L. Botsford*
David L. Botsford

## Certificate of Service

This is to certify that a true and complete copy of this document has been electronically emailed to Lisa McMinn, State Prosecuting Attorney, Michael McCrum, Attorney Pro Tem, and to Mr. David Gonzalez, Assistant Attorney Pro Tem on the same date it was electronically filed with the Clerk of the Court of Criminal Appeals.

*/s/ David L. Botsford*
David L. Botsford